EDISON v. THOMAS A. EDISON, JR., CHEMICAL CO.

(Circuit Court, D. Delaware. March 24, 1904.)

No. 235.

1. EQUITY—JURISDICTION—LIBEL.

A mere libel or defamation of business reputation, unaccompanied by threats, intimidation or coercion, or by any direct attack upon property or conduct of business, or by any direct or indirect creation of liability on the part of the complainant, is not within the equitable jurisdiction of the circuit court of the United States.

2. SAME—DEMURRER.

A demurrer does not admit the truth of general allegations of fraud, but only the facts set forth as constituting the alleged fraud and all reasonable deductions from them. And where a bill avers a legal inference which the facts stated therein do not justify, a demurrer, while confessing the facts, will not be considered as admitting the correctness of the inference.

(Syllabus by the Court.)

In Equity.

Howard W. Hayes, for complainant.
William B. Whitney, for defendant.

BRADFORD, District Judge. The questions for decision arise on a general demurrer to a bill brought by Thomas A. Edison, a citizen of New Jersey, against the Thomas A. Edison, Jr., Chemical Company, a corporation of Delaware. The bill, among other things, alleges:

"That your orator is an inventor by profession and is engaged in the manufacture of various articles invented by him, and in the manufacture of various

¶ 2. See Pleading, vol. 39, Cent. Dig. §§ 527, 533.

commercial articles by the use of machinery and methods invented by him; that he has taken out numerous patents in the United States and other countries of the world and is well known as an inventor throughout the business and scientific world; that among his other inventions he invented the phonograph; the incandescent light system, the quadruplex telegraphy, the telephone transmitter, the fluoroscope, the mimeograph, the kinetoscope, the magnetic, concentration of ore, the phono-phlex system of telegraphy, and the nickel-iron storage battery, and also many other inventions of less importance; that he has taken out many patents for the said inventions and improvements thereon, both in the United States and other countries throughout the world; that on account of his numerous inventions and his reputation in the business and scientific world the use of his name in connection with any invention or any manufactured article greatly enhances the value of that article in the public mind; that his business practice in regard to his many inventions and the patents taken out covering the same, has been sometimes to sell the inventions and patents outright, sometimes to dispose of the same to corporations in which he became interested, and sometimes to manufacture or sell or use the inventions himself in his own business; that he maintains and carries on a large and well equipped laboratory at West Orange, New Jersey, in which he employs from time to time from thirty to eighty workmen engaged in experimenting and developing, under his supervision, his various inventions, and also for the production of new industrial processes and inventions; that a considerable part of the value in the public mind of his inventions depends upon the reputation that he has built up with the public as an inventor of useful and valuable devices and processes, and that if the public should consider that the devices and processes invented by him were of little value, the income that he would derive from the selling or working the devices and processes invented by him would be very materially decreased. * * * That on account of the various electrical, mechanical and other inventions and discoveries of your orator your orator has for a long past been referred to in the public press and by popular usage by the name 'Wizard,' and that said name Wizard has been for so long a time associated in the public mind with your orator, that the said name, if used in connection with any new device, appliances or invention, is at once associated in the public mind with your orator."

It appears from the exhibits that Thomas A. Edison, Jr., was one of the original incorporators of and a subscriber to the capital stock of the defendant, taking 250 shares of the 500 shares with which the defendant was authorized to commence business; the other two original incorporators and subscribers being Franklin Everhart and Gardner W. Kimball, taking respectively 247 and 3 of the remaining shares. The bill further alleges:

"That immediately after its organization the defendant herein proceeded to sell and manufacture ink tablets under the name 'Wizard Ink Tablets,' and are continuing so to do; and also are manufacturing and selling to the public a device called a 'Magno-Electric Vitalizer' and advertises the same extensively throughout the public prints, which said advertisements are so worded as to falsely and fraudulently lead the public to believe that your orator is the inventor of the said device, while the truth is that your orator is in no way connected with the invention, of the said device and has no knowledge of it, but charges the same to be worthless and to be simply a means for obtaining money from the public for a worthless article by the misuse of your orator's name and by taking advantage of your orator's reputation as an inventor, and your orator presents as exhibits in connection with this bill three advertisements of the said alleged device cut respectively from the New York Sunday Herald of November 9, 1902, New York Sunday Sun of November 9, 1902, and Ainslee's Magazine (a monthly magazine circulating in the United States) for the month of November, 1902, marked 'Exhibit B,' 'Exhibit C' and 'Exhibit D' respectively. That after your orator's attention was called to the said advertisements in Ainslee's magazine, your orator caused a letter to be written to the said Thomas A. Edison Jr. Chemical Company asking for

their advertising matter, and in reply a letter was received dated October 24th, 1902, the printed and engraved heading of which shows the advertising of the Wizard Ink Tablet above referred to, and your orator presents as an exhibit with this bill of complaint the said letter from the Thomas A. Edison Jr. Chemical Company dated October 24th, 1902, marked 'Exhibit E.' That your orator has a son named Thomas A. Edison, Jr., who is now about thirty years of age; that your orator's said son was employed by your orator in your orator's various interests for a short time; that since that time your orator's said son has had no regular occupation, but as your orator is informed and believes, partially supports himself by trading on his name and by selling the use of his name to various unprincipled persons, who use the said name for the purpose of defrauding the public; that your orator's said son while he was in your orator's employ made no practical inventions, and your orator is satisfied that he has made no invention since that time."

The bill further alleges that the above mentioned son of the complainant has sold to certain persons, stated to have had connection with the incorporation of the defendant, including the above named Franklin Everhart, the use of the name Thomas A. Edison, Jr., "for the purpose of enabling the said persons to defraud the public by the use of the name Edison," and "that your orator's said son has never invented any ink or ink tablets and has never invented any such device as that described as 'Magno-Electric Vitalizer' in the said advertisements or any similar device." The bill further alleges:

"That the said actions of the said Thomas A. Edison, Jr. Chemical Company and its officers, agents and employees deceive and defraud the public and greatly injure your orator's reputation as an inventor by passing off on the public said ink tablets and Magno-Electric Vitalizer as the invention of your orator when the same have not been invented or manufactured by your orator, and your orator is in no way connected with the manufacture or sale of the same; which injury and damages to your orator cannot be adequately compensated for by an action in a court of law."

The complainant includes in his prayers one for an injunction as follows:

"That the said defendant, its officers, attorneys, agents and employees may be restrained by the injunction of this court from using the name Edison in connection with or as a part of its corporate title or in connection with its business, or its letter heads or advertisements circulated or published by it; and from using the word 'Wizard' in connection with the said ink tablets manufactured and sold by it and from holding out in any way that your orator is the inventor of or in any way connected with the said ink tablets so sold or manufactured by it and from holding out in any way that your orator is the inventor of, or in any way connected with, the said Magno-Electric Vitalizer so sold or manufactured by it and that a provisional or preliminary injunction may be issued restraining the said defendant, its officers, attorneys, agents and employees as aforesaid during the pendency of this suit."

Reference is made to a suit heretofore brought in this court by the complainant herein against the Edison Chemical Company, a corporation other than the defendant herein, in which a decree was entered prior to the filing of the present bill. The parties, however, were different, and the decree was entered by consent. That case cannot operate as an estoppel against this defendant nor in any manner prejudicially affect it. The bill nowhere alleges that the complainant manufactures or sells any articles resembling those manufactured and sold by the defendant, or that those manufactured or sold by the latter are in their appearance or nature such as to indicate that they were manu-

factured by the complainant. There is no charge of unfair competition in trade or of violation of a trade-mark. Briefly stated, the bill proceeds on the assumption that, the value of the complainant's inventions largely depending upon his widespread reputation as a scientist and unusually successful inventor of valuable devices and processes, any fraudulent practices by the defendant causing the public to believe that worthless or inferior articles, devices or processes made or sold by the defendant were, contrary to the fact, made or sold by the complainant, not only are a fraud upon the public but injuriously affect the complainant's reputation and income and constitute a wrong which should be restrained in equity at his instance, there being no adequate remedy at law. The above assumption requires as one of its essential constituents that it should appear from the bill and exhibits made part thereof, that the defendant has resorted to some fraudulent means causing or. tending to cause the public to entertain such false belief. The articles which the complainant charges the defendant with fraudulently passing upon the public are a device known as a Magno-Electric Vitalizer and certain ink tablets called and put forth by the defendant as Wizard Ink Tablets. Aside from the exhibits, the bill clearly does not sufficiently charge any fraudulent practice by the defendant tending to deceive the public with respect to the origin, ownership or control of the Magno-Electric Vitalizer. While the bill avers that the advertisements relating to the Magno-Electric Vitalizer "are so worded as to falsely and fraudulently lead the public to believe that your orator is the inventor of the said device," an examination of the exhibits containing those advertisements does not bear out the averment. In Exhibit B it is stated that,

"The Magno-Electric Vitalizer is the invention of a son of the Wizard of Menlo Park and one of the first great products of the skill of Thomas A. Edison, Jr., a young man who bids fair in older years to be a worthy successor of his world famed father. * * * It is being placed on the market by Mr. Edison's own company, the Thomas A. Edison, Jr. Chemical Co., 19 Stone St., New York."

Exhibit C, referring to the Magno-Electric Vitalizer, says:

"Its inventor is none other than Thomas A. Edison, Jr., son of that great wizard who has given to the world so many wonders. * * * Mr. Edison, Jr., who has been termed a true son of his father, has long been laboring on the problem which he has finally solved with the Magno-Electric Vitalizer. * * * It is being placed on the market by Mr. Edison, Jr.'s own company, The Thomas A. Edison, Jr. Chemical Co., 16 Stone Street, New York."

Exhibit D states:

"The Wizard of Menlo Park has, indeed, been a Moses in his time. But he could not accomplish everything, and he left one room in the House of Science in which Thomas A. Edison, Jr., has labored and experimented for years in perfecting the Magno-Electric Vitalizer. * * * It Is Being Placed On The Market by Mr. Edison's own Company, The Thomas A. Edison, Jr. Chemical Co., 16 Stone Street, New York."

These advertisements, as exhibits in support of general charges of fraud effected through advertisements, must be taken as qualifying and limiting such charges to the contents of the exhibits made part of the bill; and when so taken I fail to find in any of them any statement calculated to cause an ordinarily prudent and intelligent person

to believe that the Magno-Electric Vitalizer therein mentioned was invented, manufactured or sold by the complainant, but, on the contrary, much to exclude such a belief. There is nothing in any of them to confuse or confound, in the mind of any such person, the complainant either with his son, Thomas A. Edison, Jr., or the defendant, with respect to the production and sale of the device. Exhibit E is a letter received from the defendant in reply to a letter caused by the complainant to be written to the defendant asking for its advertising matter. In this exhibit the letter-head of the defendant sets forth in bold type its name—"The Thomas A. Edison Jr. Chemical Co."; and locates its factory at Cambridgeport, Mass., and its office and salesrooms at 31, 33 & 35 Stone Street, New York. The bill states that the complainant "maintains and carries on a large and well equipped laboratory at West Orange, New Jersey." The letter-heading of exhibit E discloses a connection of the word "Wizard" with ink tablets, and refers to the defendant by its proper name as "Manufacturers of the Celebrated Wizard Ink Tablet." The bill alleges that this heading "shows the advertising of the Wizard Ink Tablet above referred to." But there is nothing in exhibit E connecting the word "Wizard" with the Magno-Electric Vitalizer, nor does the bill in any manner base upon exhibit E any charge of fraud so far as that device is concerned.

The next question relates to the use by the defendant of the word "Wizard" in connection with the ink tablets manufactured and sold by it. Does the bill sufficiently charge any fraudulent employment of that term by the defendant causing or tending to cause the public to believe that such tablets were manufactured or sold by the complainant? The bill alleges that by reason of his inventions and discoveries "your orator has for a long time past been referred to in the public press and by popular usage by the name 'Wizard,' and that said name Wizard has been for so long a time associated in the public mind with your orator, that the said name, if used in connection with any new device, appliances or invention, is at once associated in the public mind with your orator," and "that immediately after its organization the defendant herein proceeded to sell and manufacture ink tablets under the name 'Wizard Ink Tablets,' and are continuing so to do," and "that the said actions of the said Thomas A. Edison, Jr., Chemical Company and its officers, agents and employees deceive and defraud the public and greatly injure your orator's reputation as an inventor by passing off on the public said ink tablets and Magno-Electric Vitalizer as the invention of your orator when the same have not been invented or manufactured by your orator, and your orator is in no way connected with the manufacture or sale of the same." The above statements, together with exhibit E above referred to, include all the allegations relative to the use by the defendant of the word "Wizard." It is unnecessary and would be improper to consider in this suit the allegations relating to the use of the name "Wizard" by the Edison Chemical Company, a corporation other than the defendant, and by certain individuals named in the bill, in connection with the manufacture and sale of ink, ink tablets and ink powder. The bill does not

128 F.—61

aver that the complainant is the only person who has "been referred to in the public press and by popular usage by the name Wizard," or that such name has been associated in the public mind with the complainant exclusively; or that such name had not, before and during the time of the occurrence of the several matters set forth in the bill, been used in connection with one or more articles of merchandise; or that the defendant at any time stated or advertised that the ink tablets it was selling were manufactured by the complainant. On these points the bill should have been clear and explicit. The nature of this suit peculiarly required particularity of averment. As before stated, it does not involve the violation of a trade-mark, or any unfair competition in business. If sustainable at all, it must rest on the ground of fraud. A demurrer does not admit the truth of general allegations of fraud, but only the facts set forth as constituting the alleged fraud and all reasonable deductions from them. So, too, where a bill avers a legal inference which the facts stated therein do not justify, a demurrer while confessing the facts will not be considered as admitting the correctness of the inference. It is true that it is alleged in paragraph 13 that "the said actions" of the defendant "deceive and defraud the public and greatly injure your orator's reputation as an inventor," &c. Fraud upon the public and injury to the complainant thus appear to be a deduction or inference made by the complainant from "the said actions." The allegations to which "the said actions" have reference do not include any direct, positive and definite charge of fraud. So far as the defendant is concerned it does not appear that the charge of fraud under the bill as framed is anything else than an unauthorized inference. But I am unwilling, especially in view of the liberality with which amendments are allowed in the United States courts, that the dismissal of the bill should be based solely on the foregoing considerations. Wholly aside from them the bill is fatally defective. As before stated, it has nothing to do with trade-marks or unfair competition in business. Putting the case made by the bill and demurrer in the most favorable light for the complainant, and disregarding the objections above discussed, it amounts in principle to this, viz., that the defendant by advertisements or otherwise knowingly and falsely informs the public to the detriment of the business reputation of the complainant and consequent impairment of his income, that the Magno-Electric Vitalizer, and ink tablets, in which the defendant deals, are of the manufacture of the complainant, notwithstanding the fact that the latter is in no way connected with the manufacture or sale of such articles or devices. But the bill does not charge the defendant with menace, intimidation or coercion of any kind toward customers of the complainant, or with any direct attack upon his property or conduct of his business; nor does it allege that the acts complained of have created or, if repeated, will create any liability on the part of the complainant to third persons. Further, the case as presented is, indeed, one only of constructive, indirect or implied libel or defamation by the defendant of the business reputation of the complainant and consequent diminution of his income. To hold that on the facts admitted by the demurrer the complainant is entitled to the relief he prays would establish a dangerous precedent,

calculated to produce confusion in the business world, open wide a door to fraud and result in much greater evil to the public than that suffered by the victims of the defamation. In Adriance, Platt & Co. v. National Harrow Co. (C. C.) 98 Fed. 118, Judge Coxe used language peculiarly appropriate in this connection, as follows:

"The doctrine upon which the bill relies is an exotic of recent origin which has received but scant favor in the courts of this country. The moment it becomes a recognized branch of our jurisprudence courts of equity will be urged persistently to intrude into the affairs of trade and dictate the language in which merchants shall advertise their wares. It will foster a system of vexatious judicial parentalism which will create more evils than it will cure. Commerce needs no such factitious aid."

The case now in hand, being one merely of libel or defamation of business reputation, unaccompanied by threats, intimidation or coercion, or by any direct attack upon property or conduct of business, or by any direct or indirect creation of liability on the part of the complainant, is not within the equitable jurisdiction of this court. While the decisions are somewhat inharmonious, I am satisfied by an overwhelming weight of authority that this court has no jurisdiction to enjoin the publication of a mere libel or slander, and, consequently, no authority to grant the relief prayed. It is unnecessary to discuss the authorities on this point. To cite a few of them is sufficient. Prudential Assurance Co. v. Knott, 10 Ch. App. Cas. 142; Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69, 19 Am. Rep. 310; Whitehead v. Kitson, 119 Mass. 484; Francis v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165; Kidd v. Horry (C. C.) 28 Fed. 773; Baltimore Car Wheel Co. v. Bemis (C. C.) 29 Fed. 95; New York & R. Cement Co. v. Coplay Cement Co. (C. C.) 44 Fed. 277, 10 L. R. A. 833; Fougeres v. Murbarger (C. C.) 44 Fed. 292; Balliet v. Cassidy (C. C.) 104 Fed. 704; Marlin Fire Arms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310. I find nothing in Lewin v. Welsbach Light Co. (C. C.) 81 Fed. 904, Farquhar v. National Harrow Co., 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755, or Edison v. Hawthorne, 108 Fed. 839, 48 C. C. A. 67, all decided in this circuit, inconsistent with the conclusion reached.

The demurrer must be sustained and the bill dismissed with costs.