VASSAR COLLEGE v. LOOSE–WILES BISCUIT CO. et al.

(District Court, W. D. Missouri, W. D. July 8, 1912.)

No. 3,578.

1. CORPORATIONS (§ 506*)—ACTIONS—PARTIES—JOINDER—OFFICERS OF CORPORATION.

Where, in a suit against a corporation and certain of its officers to enjoin the use of complainant's corporate name and insignia in the sale of merchandise, the cause of action, if any, alleged against the individual defendants arose solely from their official relation to the corporation, and no separate individual acts were charged against them, they were improperly joined as individual parties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1958–1970; Dec. Dig. § 506.*]

2. INJUNCTION (§ 96*)—PERSONAL PRIVACY—RIGHTS OF CORPORATION.

Vassar College, being a public institution, depending on and inviting wide-spread publicity for the fullest return from the exercise of its functions as an institution of learning, had no right of privacy which it could preserve by injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 167; Dec. Dig. § 96.*]

3. INJUNCTION (§ 98*)—JURISDICTION—LIBEL.

A court of equity is without jurisdiction to restrain the publication of a libel.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 169–171; Dec. Dig. § 98.*]

4. INJUNCTION (§ 98*)—CORPORATIONS—SPECIAL DAMAGES.

Where a publication concerning the name and insignia of a corporation did not appear to be defamatory or libelous per se, the corporation, if

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

entitled to recover at all therefor, could only recover on pleading and proving special damages.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 169–171; Dec. Dig. § 98.*]

**5. TRADE-MARKS AND TRADE-NAMES (§ 31*)—USE OF CORPORATE NAME AND INSIGNIA—ADVERTISEMENT OF MERCHANDISE—DAMAGES.**

Defendant, a Missouri corporation, manufactured and sold a variety of candy called "Vassar Chocolates," which it advertised widely, employing the name "Vassar" together with a likeness of a young lady in scholastic garb and wearing a mortarboard hat, also using an imitation of the college pennant, a college yell, and imitation of the college seal, with the words "Vassar Chocolates" and "Always fresh" substituted for the words "Vassar College" and "Purity and Wisdom." *Held*, that Vassar College, as a public corporation, had no such property right in its name and insignia displayed by defendant in its advertisement as would entitle the college to restrain defendant's use thereof in his advertisements; the injury, if any, being psychological, rather than real.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 35; Dec. Dig. § 31.*]

**6. EQUITY (§ 46*)—JURISDICTION—EXTENT OF RIGHT.**

Equity does not assume the burden of preventing all the contemplated legal wrongs on the theory that subsequent remedies at law may prove inadequate or less satisfactory.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163; Dec. Dig. § 46.*]

In Equity. Suit by the Vassar College, a corporation, against the Loose-Wiles Biscuit Company and others. Bill dismissed.

E. F. Ware, of Kansas City, Kan., Ralph Nelson, of Cœur d'Alene, Idaho, and E. H. Ware, of Kansas City, Kan., for complainant.

Frank Hagerman and Kimbrough Stone, both of Kansas City, Mo., for defendants.

VAN VALKENBURGH, District Judge. The complainant Vassar College, is a corporation created and existing under and by virtue of the laws of the state of New York, with its principal place of business at the city of Poughkeepsie, in that state. It is a well-known institution of learning for the education in the arts and sciences of such women as may pass examination for admittance thereto. It takes its name from its founder, Matthew Vassar, by whom it was liberally endowed. The defendant, Loose-Wiles Biscuit Company, is a corporation organized and existing under the laws of the state of Missouri, with its principal place of business at Kansas City, in said state. The defendant J. S. Loose is its president, the defendant J. H. Wiles its vice president, and the defendant F. B. Houston its manager. The defendant corporation is engaged in the manufacture and sale of biscuit and kindred products on an extensive scale, and, among other such products, of candy, one variety of which is called "Vassar Chocolates," which has been widely advertised. It is substantially charged in the bill that the packages containing that candy and the advertisements thereof employ the name of Vassar, a likeness of a young lady in scholastic garb and wearing a mortarboard hat, an

imitation of the college pennant, a college yell, and an imitation of the college seal, with the words "Vassar Chocolates" and "Always fresh" substituted for the words "Vassar College" and "Purity and Wisdom," respectively. Complainant charges that it is thereby brought into public contempt and ridicule, and that, because thereof, its business is injured, and its graduates and students humiliated.

For its relief complainant prays:

"A writ of injunction to be directed to the defendants, and each of them, touching the matter in question, and restraining them all and singly, their agents, attorneys, and employés, and particularly enjoining the said individual defendants, as officers and directors of said defendant corporation, from using the word 'Vassar' in their business, and from using any word, sign, symbol, emblem, or device relating in any manner to the complainant; or in using, advertising, or publishing anything suggestive thereof or connected therewith, or in printing any card, label, device, words, or symbols of such import, as is herein set forth, or in imitating or simulating its seal, colors, or emblems. And that the said individual defendants be particularly enjoined from taking any official or personal action that would tend to violate the rights of the complainant, regarding the matter herein complained of."

To this bill the defendants have demurred, stating the following grounds:

"(1) The complainant has not in and by said bill made or stated any such cause as does or ought to entitle it to any such relief as is thereby sought and prayed for against these defendants.

"(2) The complainant has in and by said bill improperly joined the Loose-Wiles Biscuit Company, a corporation, with these defendants, whereas there is no joint cause of action averred."

[1] In the bill the cause of action, if any, against the individual defendants, springs solely from their official relation to the corporation. No separate individual acts are charged against them.

As will be gathered from what has been stated, as well as from an inspection of the bill in its entirety, the complaint entered partakes largely of the nature of libel, and also suggests an invasion of the "right of privacy," but complainant in its argument and brief expressly denies that either the one or the other lies at the foundation of its suit. In their brief counsel for complainant say:.

"Vassar College does not base its claim on a right to privacy because it is a public institution, but it does base it upon a 'right to be let alone' unless some public purpose is subserved. The college, its name, its seal, and its belongings are private property, and, if irreparable injury, incapable·of measurement, ensues from not being let alone, then, if no public right or interest is involved, the defendants should be enjoined."

Also: ·

"It is a public institution, and it claims that the acts of the defendants damage the property and the use of the property of the complainant."

And again:

"We have not alleged a libel, and upon our allegation in the complaint we may not be entitled to an action at law; but a person may have no action at common law, and yet one in equity."

[2] It is quite obvious that the complainant could not well invoke the right of privacy, whatever that right may be determined to be,

from the irreconcilable conflict of opinions and views of courts of last resort in various jurisdictions, because, as is admitted, it is not only a corporation, but a public institution, depending upon and inviting wide-spread publicity for the fullest return from the exercise of its functions as an institution of learning. Where a person is a public character, the right of privacy disappears. Corliss v. E. W. Walker Co. (C. C.) 57 Fed. 434; s. c., 64 Fed. 280, 31 L. R. A. 283. As said by counsel for defendants in their brief:

"The plaintiff is a corporation, and therefore can have no 'right of privacy' in its name, as the entire basis of the right of privacy cases is an injury to the feelings or sensibilities of the party. A corporation can have no such ground for relief."

However, as complainant expressly disclaims reliance upon this right, the court is relieved from the necessity of attempting to bring harmony out of the conflict of decisions on this subject. It becomes necessary to determine, therefore, in what respect the rights of complainant, of which this court can take cognizance in this proceeding, have been invaded. The bill, among other things, contends that "anything that would affect the name of 'Vassar,' or bring it into ridicule or derision, would be an injury which would be irreparable, and would affect the value of the plant and the value of its use." It is asserted that the use of this name and certain pictures in connection with advertisements, among other things, is calculated to create in the public mind the impression that the chocolates sold by the defendants are a particular favorite at Vassar College and with the students and alumnæ thereof; that mortarboard hats, a distinctive scholastic garb, are peculiar to Vassar students; that the portrayal of a building in the form of a Greek Temple, certain college colors, and a seal with certain inscriptions paraphrasing those upon the seal of the complainant corporation, tend to provoke discussion and reproach, to produce criticism and ridicule, and are matters of regret, pain, and annoyance to the students and to the graduates of the college, and tend to depreciate the college in the eyes of the public. As to the graduates and students, it may be said that they are not parties to this suit, and this character of injury to feelings is scarcely a matter of legal remedy. While these allegations involve the annoyance which springs from wounded sensibilities, and while the "right to be let alone" inheres in the right to privacy and would seem to involve an assertion of that right, nevertheless it is inferable from the bill that the real injury for which relief is prayed is sought to be founded upon the assumption that the college is thereby depreciated in the eyes of the public, and the complainant is caused to lose its standing and supremacy as an educational institution, and thus to suffer a loss which it cannot estimate.

[3] This injury would seem to be either libel or in the nature of libel, but here we are met with two difficulties. The first is that in this country a court of equity is without jurisdiction to restrain the publication of libel.

[4] The second is that, as this is a corporation and as the publication does not appear to be defamatory or libelous per se, its right to

recover in such an action may well be doubted. It would seem to be necessary in order to support recovery that it should plead and prove special damages from the publication, and this, it expressly avers, it cannot do. Viewing the bill as, in effect, having charged libel, would not the demurrer have to be sustained, first, because of want of jurisdiction of the subject-matter, and, second, because no cause of action has been stated, or according to the averments of the bill, can be stated? But counsel for complainant in their brief, as we have seen, expressly disclaim that they have charged a libel, but rather that the name, seal, and belongings of the college thus appropriated for advertising purposes are the private property of the complainant, and that if irreparable injury, incapable of measurement, ensues, then, if .no public right or interest is involved, the defendant should be enjoined, and that this is true, even though complainant may have no action at common law or by statute. It may be observed in passing that there is presented no controversy respecting a trade-mark, nor a trade-name, nor the use of such in unfair competition. The complainant is not engaged in the manufacture or sale of candy, nor is its business injuriously affected in such a sense.

[5] It becomes pertinent to inquire whether as a public corporate institution it has such a property right in the name "Vassar" and in the other insignia displayed by the defendants in their advertisements as would entitle it to restrain the use of such in any manner or form in connection with the advertisement and sale of merchandise, either with or without damage to itself, whether appreciable or otherwise. It would seem that upon this view, if at all, the right of complainant must be founded; also, it must be considered whether upon the face of the bill the court can say, as matter of law, whether or not injury could result from the acts complained of. As said by the Supreme Court in Re Sawyer, 124 U. S. 200–210, 8 Sup. Ct. 482, 487 (31 L. Ed. 402):

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

Because of the complex nature of complainant's statement of the character of the injury complained of, whereby its differentiation from libel becomes a matter of difficulty, it is necessary, despite the disclaimer entered, to consider the attitude of courts of equity toward publications amounting to libel, or in the nature of libel. Some definitions of libel, which have met with frequent judicial approval, will disclose what close analogy, if not identity, it bears to the publications here complained of. "A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures tending either to blacken the memory of one dead or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule." 25 Cyc. 243, and cases cited. Of course, the only malice essential is presumed from the willful or intentional doing of the unlawful act. "A censorious or ridiculing writing, picture, or sign, made with a mischievous and malicious intent towards government, magistrates, or individuals. Any writing, picture, or other sign tending, without lawful excuse,

to injure the character of an individual, by subjecting him to ridicule, contempt, or disgrace. A false and unprivileged publication which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has the tendency to injure him in his business." 25 Cyc. 244, and cases cited. It is the general rule in the United States that a court of equity has no jurisdiction to enjoin the publication of a libel. "If a court of equity could interfere and use its remedy of injunction in such cases, it would draw to itself the greater part of the litigation properly belonging to courts of law." Francis et al. v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165. "Charges of slander are peculiarly adapted to and require trial by jury; and exercising, as we do, authority under a system of government and law which by a fundamental article secures the right of trial by jury in all cases at common law, and which by express statute declares that suits in equity shall not be sustained in any case where a plain, adequate, and complete remedy may be had at law, as has always heretofore been considered the case in causes of libel and slander, we do not think that we would be justified in extending the remedy of injunction to such cases." Bradley, Justice, in Kidd v. Horry et al. (C. C.) 28 Fed. 773; Fougeres v. Murbarger et al. (C. C.) 44 Fed. 292. Of course, where the attempt to injure consists of acts or words which will operate to intimidate and prevent the customers of a party from dealing with or laborers from working for him, an exception to the rule stated is presented, and the courts have with nearly equal unanimity interposed by injunction. Cœur D'Alene Consolidated & Mining Co. v. Miners' Union (C. C.) 51 Fed. 260–265, 19 L. R. A. 382; Balliet v. Cassidy (C. C.) 104 Fed. 704. If, then, these publications do, in fact, amount to libel this court is clearly without jurisdiction. If they do not amount to libel, it is necessary to determine what personal or property right of complainant of which the law can take cognizance has been invaded. In Assurance Co. v. Knott, L. R. 10 Ch. 142, Lord Cairns held that if the publications did not amount to libels, and were therefore innocuous and justifiable in the eye of the court of common law, he was at a loss to understand upon what principle the court of chancery could interfere; and if, on the other hand, the comments were libelous, it was clearly settled that the court of chancery had no jurisdiction to restrain their publication. Casey v. Cincinnati Typographical Union No. 3 (C. C.) 145 Fed. 142, 12 L. R. A. 193. "A person cannot be enjoined from doing any act unless it is fairly apparent the act is wrongful, or the person sought to be enjoined has no right to do that act. * * * It (a court of equity) cannot try the question for itself, or determine the right in advance of the law court." Citizens' Light, H. & P. Co. v. Montgomery Light & W. P. Co. (C. C.) 171 Fed. 553–556. It must be remembered that the complainant is a corporation, and, as such, its rights are not as broad as those of an individual in this respect. It may maintain an action for libel, but only upon averment and proof of special damages. This would clearly be true in respect of a slander of its goods and property. 10 Cyc. par. 1336, and cases. In this case,

the complainant, being a corporation, has no reputation or character, as commonly understood, that can be assailed, but the injury, if any, must be directed to its business; and to maintain an action for libel it must aver and prove special damages. This, it confesses, it cannot do. The publications made are not actionable per se, and complainant could not recover, as for libel, if they were. It is evident, therefore, that recovery cannot be predicated upon the theory of libel, whether from the standpoint of equity or of law.

An appeal to the so-called "right of privacy" is also disclaimed; but, nevertheless, complainant's bill almost, if not entirely, invokes that right. The argument in Edison v. Polyform Mfg. Co., 73 N. J. Eq. 136, 67 Atl. 392, proceeds along this line, and an analysis of that case will dispose of some of the important contentions here presented. It was there assumed that Mr. Edison's name is his own property, and therefore it is asked why its pecuniary value, if it has one, does not belong to its owner, rather than to the person making an unauthorized use of it. Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, is disapproved apparently upon the ground that it does not recognize the right of privacy, and the invasion of this alleged personal right, with its resulting humiliation and distress, as the foundation of recovery. Pavesich v. Insurance Co., 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101, 106 Am. St. Rep. 104, 2 Ann. Cas. 561, which is confessedly bottomed upon that assumed right, is strongly commended. Nevertheless, the court finds that injury to property in some form is an essential element to relief. However, the insignificance of the right from a pecuniary standpoint does not always bar relief, and in that view it concludes that Mr. Edison in that case is clearly entitled to an injunction. The cases relied upon are Vanderbilt v. Mitchell, 72 N. J. Eq. 910, 67 Atl. 97, 14 L. R. A. (N. S.) 304; Routh v. Webster, 10 Beav. 561; Walter v. Ashton, 2 Ch. 282. All these cases present a direct possible injury to property. The first involved a risk of pecuniary liability, so the second, and so the third, all because the complainant was held out as a responsible party in the several civil enterprises considered. Apparently upon this ground the defendant company was restrained from holding out that Mr. Edison had any connection with or part in the business. "The abstract question whether a company can innocently use, as a part of its title, the name of a distinguished living character, is not before me for decision, and no opinion is expressed about it." So that the relief granted was based upon the apprehension of direct financial injury—that is, a right of property. The jurisdiction of a court of equity was justified by a quotation from the opinion in Vanderbilt v. Mitchell, supra, to wit:

"From time immemorial it has been the rule not to grant equitable relief where a party praying for it had an adequate remedy at law. But modern ideas of what are adequate remedies are changing and expanding, and it is gradually coming to be understood that a system of law which will not prevent the doing of a wrong, but only affords redress after the wrong is committed, is not a complete system, and is inadequate to the present needs of society."

Concerning one aspect of the general doctrine here expressed, there is, perhaps, little difference of opinion. Modern ideas are changing and expanding, and equity should, of course, meet the demand for elasticity which originally called it into being. It is declared that:

"A system of law which will not prevent the doing of a wrong, but only affords redress after the wrong is committed, is not a complete system, and is inadequate to the present needs of society."

This sounds convincing; but does it not mean that practically all remedies at law are in this sense inadequate, and that equitable relief should be very generally substituted for them? We are led to wonder whether this has not been true of society at all times—past as well as present. If so, have courts of equity in their administration always failed to afford adequate relief in certain cases? Or must we concede that in their evolution, wisdom, born of unfolding experience, has been justified in placing a limitation upon their jurisdiction?

We may readily admit, for the purposes of this discussion, that one who has been held out to be so intimately connected with an enterprise, fraudulent or otherwise, as to import personal interest and responsibility, may, by acquiescence and apparent acceptance, incur liability; that, after that liability accrues, he may find his redress in an action at law inadequate; and, for this reason, he may, perhaps, in some instances, property rights being manifestly involved, with propriety seek preventive relief.

[6] But does this mean that equity must in general assume the burden of preventing all contemplated legal wrongs upon the theory that subsequent remedies at law may prove inadequate or less satisfactory? If so, what becomes of the right of trial by jury, and what may be thought of the system of court paternalism thus to be established? In the Edison Case the complainant was, by publication, directly and pointedly connected with the business in a position of responsibility. Here the effect, if any, upon the complainant's property is indirect, remote, and speculative. If the unauthorized publications of defendants bring the complainant into ridicule and resulting disrepute, they are in the nature of libel. If so, they are actionable at law if special damages can be proved. In that case a court of equity would ordinarily seem to be without jurisdiction, but if the damages cannot be ascertained, or even certainly known to exist, it is now said there is no adequate remedy at law; nor, it might be added, any cause of action at all in favor of a corporation. What then? Must a chancellor say arbitrarily that there is damage when no other party nor tribunal can point one out? May he create a right when none exists at law; or, in another view, is it not equivalent to saying that the publication is damaging and libelous per se, and, if so, special damages need not be laid nor proven? Legal remedies in such cases have always been thought to be adequate. Here, again, the jurisdiction of equity would be wanting, and, if it assume jurisdiction in such a case, where may it properly leave off? It would seem that it must, unaided and unfettered, undertake to redress, or rather to prevent, all civil wrongs upon its own initiative and its own conscience. It would appear that this is not permitted by the spirit of

our institutions, nor invited by that of "changing and expanding modern ideas." However, the courts have generally encountered these same difficulties, and the weight of authority has furnished no uncertain guide.

The only property right asserted is that to the name of "Vassar" and the signs, symbols, emblems, or devices relating thereto. The exclusive right to the use of a surname in cases like this has frequently been denied, and to that effect is the greater weight of authority. Clark v. Freeman, 11 Beavan, 112. "A person has no such exclusive right to the use of a surname, or a name applied to house or land, as will enable him to prevent its assumption by another." 29 Cyc. 271; Olin v. Bate et al., 98 Ill. 53, 38 Am. Rep. 78. "Equity will not restrain the use of the name and likeness of a deceased person as a label for a brand of cigars named after him, though offensive to the family of the deceased, so long as it does not amount to a libel. * * * Society understands this, and may be depended upon to make proper allowances in such cases; and although each individual member may, in his own case, suffer a feeling of humiliation when his own name or that of some beloved or respected friend is thus used, he will usually, in the case of another, regard it as a trifle. We feel sure that society would not think the less of Col. John Atkinson if cigars bearing his name were sold in the shops. Nor are his friends brought into disrepute thereby. So long as such use does not amount to a libel, we are of the opinion that Col. John Atkinson would himself be remediless, were he alive, and the same is true of his friends who survive." Atkinson v. Doherty & Co., 121 Mich. 372, 80 N. W. 285, 46 L. R. A. 219, 80 Am. St. Rep. 507. "An injunction cannot be granted to restrain the unauthorized publication and distribution of lithographic prints, or copies, of a photograph of a young woman as part of an advertisement of a legitimate manufactured article, where there is no allegation that the picture is libelous in any respect." Roberson v. Rochester Folding Box Co., 171 N. Y. 538–539, 64 N. E. 442 (59 L. R. A. 478, 89 Am. St. Rep. 828). In Corliss v. E. W. Walker Co. (C. C.) 64 Fed. 280, the portrait, and it may be presumed the name of a private individual, is recognized as property, but a distinction is made between such a person and a public character. In Edison v. Thomas A. Edison, Jr., Chemical Co. (C. C.) 128 Fed. 957, the bill was brought by Thomas A. Edison to enjoin the defendant company from using the name "Edison" and the word "Wizard" in connection with the manufacture of certain ink tablets, on the ground that such was calculated to convey to the public the impression that the complainant was connected with the manufacture of such tablets, that the same were of little value, and that, if the public should consider that devices and processes invented by him were of little value, the income that he would derive from the selling or working of the processes invented by him would be very materially decreased, that the injury and damages thus resulting could not be adequately compensated for by an action in a court of law, presumably because they were insusceptible of ascertainment and exact calculation. It will be seen that in principle the case there presented was very similar to the one at bar. The court held:

"The bill does not charge the defendant with menace, intimidation, or coercion of any kind toward customers of the complainant, or with any direct attack upon his property or conduct of his business; nor does it allege that the acts complained of have created, or, if repeated, will create, any liability on the part of the complainant to third persons. Further, the case as presented is, indeed, one only of constructive, indirect, or implied libel or defamation by the defendant of the business reputation of the complainant and consequent diminution of his income. To hold that on the facts admitted by the demurrer the complainant is entitled to the relief he prays would establish a dangerous precedent, calculated to produce confusion in the business world, open wide a door to fraud, and result in much greater evil to the public than that suffered by the victims of the defamation."

The conclusion is that the case made was one merely of libel or defamation of business reputation, unaccompanied by threats, intimidation or coercion, or by any direct attack upon property or conduct of business, or by any direct or indirect creation of liability on the part of the complainant, and was therefore not within the equitable jurisdiction of the court. Similar views are expressed in Henry v. Cherry et al., 30 R. I. 13, 73 Atl. 97, 24 L. R. A. (N. S.) 991, 136 Am. St. Rep. 928, 18 Ann. Cas. 1006, and Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828.

In Adriance, Platt & Co. v. National Harrow Co. (C. C.) 98 Fed. 118, Judge Coxe said:

"The doctrine upon which the bill relies is an exotic of recent origin which has received but scant favor in the courts of this country. The moment it becomes a recognized branch of our jurisprudence courts of equity will be urged persistently to intrude into the affairs of trade and dictate the language in which merchants shall advertise their wares. It will foster a system of vexatious judicial parentalism which will create more evils than it will cure."

In Edison v. Edison Polyform Mfg. Co., 73 N. J. Eq. 136, 67 Atl. 392, already referred to, the court held:

"An injunction will lie to restrain the unauthorized use of one's name by another as a part of its corporate title, or in connection with its business or advertisements, his picture and his pretended certificate that a medicinal preparation, which such other is engaged in manufacturing, is compounded according to the formula devised by him, though he is not a business competitor."

In that case, as has been seen, it was ultimately shown that a distinct property right in the way of possible personal responsibility for the obligations of the defendant company might accrue by reason of complainant being thus held out to be connected with the defendant company in the absence of repudiation on his part. But, nevertheless, the court states in support of its position the language of the Supreme Court of the United States in Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247, wherein it is said:

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property."

The language here used was in connection with alleged unfair competition in trade. Both parties had, or were entitled to use, the same name, and it is with reference to the right of a man to use his own name, if that use be a reasonable, honest, and fair exercise of such

right, that the court asserted that a man's name is his own property. This statement was not made in the sense of denying the right of one person to use the surname of another, and follows a previous announcement that a man may in some cases be denied the right to use his own name under circumstances which would result in unfair competition in trade. The rules governing competition have, of course, no application to the matter here under inquiry. The weight of authority is clearly against the contention that such property rights exist in a surname that its use may be enjoined merely because it is a source of profit to the user and under circumstances which do not result in unfair competition and business loss resulting therefrom to the one asserting proprietorship in such surname, and particularly would this be true of a public corporate citizen which has assumed a name under the conditions here presented. So that we must find that complainant has sustained some injury to its property, which the law can recognize, distinct from libel and the mere use of a portion of its corporate name, before the jurisdiction of a court of equity can attach.

In the case of Adriance, Platt & Co. v. National Harrow Co., supra, the court overruled the demurrer in accordance with these further views:

"Cases of such rank injustice may arise that the interference of a court of equity may be necessary. * * * The court is not prepared to say that a case may not be so saturated with fraud, falsehood, and malice as to require the summary interference of a court of equity Although it is reasonably certain that the case at bar is not such a case, it is also clear that such a case may be proved under the sweeping allegations of the bill, which charges, in brief, that all the material statements of the circulars are false, fraudulent and malicious and made with intent to destroy the complainant's business."

In this bill there are no such allegations. It says:

"The complainant says that all of the acts of the defendants, herein complained of, are wholly without the consent or permission of the complainant, and are done with mercenary motives, with intent to deceive, and without regard for the feelings, sensibilities, rights or wishes of the complainant, or of others now or formerly connected with said college. * * * And that all such acts or doings are willful, and are contrary to equity and good conscience, and to the manifest wronging of the complainant and to its irreparable injury."

In Edison v. Thomas A. Edison, Jr., Chemical Co., supra, it is said:

"A demurrer does not admit the truth of general allegations of fraud, but only the facts set forth as constituting the alleged fraud and all reasonable deductions from them. And, where a bill avers a legal inference which the facts stated therein do not justify, a demurrer, while confessing the facts, will not be considered as admitting the correctness of the inference."

So here the bill sets forth explicitly the facts from which it asks the wrongful conduct of the defendants and its own resulting injury to be inferred. So that the entire case sought to be made is, and is intended to be, fully disclosed upon the face of the bill. In such a case the right to relief can adequately be determined upon demurrer. The wrong here complained of is indefined and uncertain even in the minds of complainant's counsel, who, upon the original argument of the case, frankly admitted that "complainant was unable to find any case in point for or against its contention, and states the case to be in its

opinion one of a new character and without exact precedents, and that, therefore, it should be decided according to right and justice as the same should appear from the reading of the complaint." Unfortunately for this position "equity does not undertake to relieve from all the annoyances caused by those who are inconsiderate of the feelings and business interests of others. On the contrary, it is a general rule, which has some exceptions, that it will not undertake to interfere where a party has an adequate remedy at law and when it does interfere it is guided by principles of equity, which during the long course of its administration have become established." Marlin Fire Arms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310. Any departure from these sound principles is likely to lead to evils far greater than those sought to be remedied. In an analogous case the court in Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, said:

"If such a principle be incorporated into the body of the law, through the instrumentality of a court of equity, the attempts to logically apply the principle will necessarily result, not only in a vast amount of litigation, but in litigation bordering upon the absurd; for the right of privacy, once established as a legal doctrine, cannot be confined to the restraint of the publication of a likeness, but must necessarily embrace as well the publication of a word picture, a comment upon one's looks, conduct, domestic relations, or habits. And, were the right of privacy once legally asserted, it would necessarily be held to include the same things if spoken, instead of printed, for one, as well as the other, invades the right to be absolutely let alone."

And again:

"The temperaments of individuals are various and variable, and the imagination exerts a powerful and incalculable influence in injuries of this kind. There are many moral obligations too delicate and subtle to be enforced in the rude way of giving money compensation for their violation. Perhaps the feelings find as full protection as it is possible to give in moral law and a responsive public opinion. The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries."

In Schuyler v. Curtis, 147 N. Y. 434-448, 42 N. E. 22, 26 (31 L. R. A. 286, 49 Am. St. Rep. 671), the same court said:

"In this class of cases there must be some reasonable and plausible ground for the existence of this mental distress and injury. It must not be the creation of mere caprice nor of pure fancy, nor the result of a supersensitive and morbid mental organization, dwelling with undue emphasis upon the exclusive and sacred character of this right of privacy. Such a class of mind might regard the right as interfered with and violated by the least reference even of a complimentary nature to some illustrious ancestor without first seeking for and obtaining the consent of his descendants. Feelings that are thus easily and unnaturally injured, and distressed under such circumstances, are much too sensitive to be recognized by any purely earthly tribunal. A proposed act which a court will enjoin because it would be a violation of a legal right must, among other conditions, be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to any one possessed of ordinary feeling and intelligence, situated in like circumstances as the complainant, and this question must always to some extent be one of law."

While these cases were dealing specifically with the so-called right of privacy, nevertheless the principles with which they dealt were sim-

ilar to those here presented. There, however, the complainant was an individual, with correspondingly strong claims upon the consideration of the court. Here the complainant corporation must found its claim to relief upon injury to its business, and the act complained of must be of such a nature as reasonable men can see might and probably would produce the injury. "It is settled by authority that a libel on a thing is not actionable unless the owner of the thing alleges and proves that he has sustained pecuniary loss as a necessary consequence of the publication." Marlin Fire Arms Co. v. Shields, supra. This is equally true of the wrong here asserted, whether it be considered as libel or otherwise. The complainant concedes that the injury, if any, is not susceptible of estimation or determination. Whether it exists at all must be, to some considerable extent, a question of law.

I am unable to perceive that any right exists in complainant which is cognizable in a court of equity; nor can I perceive any injury which this court has power to remedy. The injurious effects, if any, of the advertisements complained of, are speculative in the highest degree. They seem to me to be largely creations of fancy, due to supersensitiveness and apprehension. They are lodged rather in a feeling of distaste on the part of those interested in Vassar College for seeing its name and insignia, inferentially at least, linked with any commercial pursuit, than in any appreciable injury to its tangible property. I have not felt, and cannot feel, that any one could think less of this eminent institution by reason of the acts of defendants recited in this bill; and I believe it to be beyond the power of this court to take cognizance of the psychological injuries recited. A citizen of the United States has no transcendent personal right founded on instinct of nature, in addition to the rights guaranteed by the written Constitution. The constitutional provision entitling every man to a certain remedy for all injuries or wrongs received in his person, property, or character is not self-executing. Individual conception of natural justice is not law. To make it law is therefore a legislative act, forbidden by the Constitution to the courts. Henry v. Cherry et al., 30 R. I. 13, 73 Atl. 97, 24 L. R. A. (N. S.) 991, 136 Am. St. Rep. 928, 18 Ann. Cas. 1006. If the use of a name in commercial publications, as in the case at bar, be deemed an unwarranted invasion of personal rights, it is within the province of the Legislature so to declare. The courts cannot create a right unknown to the common law, and not provided by statute.

For all the foregoing reasons, it follows that the bill must be dismissed.