S. Anargyros, Appellant, *v.* Egyptian Amasis Cigarette Company and Others, Respondents.

*Trade mark — imitation of cigarette packages.*

Evidence given on a motion for a temporary injunction, made in an action brought by a cigarette manufacturing corporation to restrain former employees thereof, and a corporation organized by them, from using certain packages, package labels and cigarette wrapper labels, alleged to have been prepared in imitation of those of the first-mentioned corporation, considered in connection with the packages and labels themselves, and held to establish that the resemblance between them is such that it is calculated to, and will, in fact, deceive the ordinary buyer.

Van Brunt, P. J., and Hatch, J., dissented.

APPEAL by the plaintiff, S. Anargyros, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of June, 1900, denying the plaintiff's motion for a temporary injunction restraining the defendants from imitating and infringing the plaintiff's package, package label and cigarette wrapper label.

*Moritz B. Philipp*, for the appellant.

*Adolph Freyer*, for the respondents.

INGRAHAM, J.:

The plaintiff, a domestic corporation, and its predecessor have been engaged since 1889 in the importation and manufacture of cigarettes in the city of New York. Prior to the year 1891 these cigarettes were manufactured in Egypt and imported to this country by plaintiff's predecessor, but in 1891 the plaintiff's predecessor commenced the manufacture of these cigarettes in this country. About the year 1889 he adopted a label for his goods which, with some unimportant changes, has been continued, and the plaintiff's cigarettes had become well known in the trade as " Egyptian Deities." The plaintiff alleges that he adopted also, as a distinguishing mark for his goods, a distinctive box of somewhat peculiar design that was different from any package or box then or prior to that time used in connection with cigarettes; and he also adopted a device printed upon each cigarette. Prior to January, 1890, the plaintiff's predecessor had in his employ the defendant, Aaron S. Sulzberger as a salesman, to sell goods for the plaintiff to retail dealers in the city of New York and elsewhere, and the defendant Karakitson, as foreman of the tobacco leaf department, whose duty it was to prepare the tobacco used in the manufacture of these cigarettes, and that these defendants, by reason of the employment, acquired knowledge of the plaintiff's business and customers. It also appears that in the month of April, 1900, these defendants organized the defendant corporation, which at once went into business in competition with the plaintiff; that they manufactured cigarettes of the same general character and size, putting them up in similar packages, prepared in imitation of the plaintiff's packages, and adopted a label which, if not an exact imitation of the plaintiff's label in its general characteristics, closely resembles it. It is true

that there is some distinction between the two labels in color, the foundation of the plaintiff's label being a light blue, while that of the defendants is a light green; but with the exception of this coloring the resemblance is very close, so close as to carry conviction at once that the adoption of this label by the defendants, the adoption of the form of the package which had been used by the plaintiff, a colored label with Egyptian figures in gold letters, writing a name across the label, which, while a different name from that written upon the plaintiff's label, is similar in position and general character to that of the plaintiff's, using the words "No. 3 Superfine" across the label as used by the plaintiff, and printing in black letters the words "Egyptian Amasis" across the face of the label in the same position as the words "Egyptian Deities" were printed across the plaintiff's label, were for the purpose of simulating as nearly as possible the plaintiff's label, and thus obtaining the advantage of the plaintiff's established trade. All tend strongly to show that it was the intention of the defendants to put their goods upon the market in a form that would enable them to dispose of them as the plaintiff's goods and thus take advantage of the reputation of the plaintiff acquired in the conduct of this business. The likeness is too pronounced and the points of difference too insignificant to leave it in doubt as to the object of the defendants. And so in regard to the device stamped upon each individual cigarette; while somewhat different from that of the plaintiff, its general similarity is striking. This conclusion is confirmed by the proof submitted on behalf of the plaintiff as to conversations had with the individual defendants, inducing persons to purchase these goods upon the express statement that they could substitute them for the plaintiff's goods and offering them at a less price than that established by the plaintiff.

Upon the affidavits submitted to the court below, I am satisfied that this was a deliberate attempt to devise a package and label which would enable the defendants, with their knowledge of the plaintiff's trade and customers, to sell their goods as the goods of the plaintiff. What was said by the Court of Appeals in the case of *T. A. Vulcan* v. *Myers* (139 N. Y. 364) applies. "The similarity between the names employed and the devices used; the identity of the medals represented and the correspondence of size, color and general appearance, when combined upon the wrapper of a box, are so

close and striking that an intending purchaser of the plaintiff's goods would be likely to be imposed upon if the matches sold by defendant in these packages should be offered. While competition is essential to the life of commerce, and is the consumer's main defense against extortion, it should be fair and honest, and the manufacturer who produces an article of recognized excellence in the market, and stamps it with the insignia of his industry, integrity and skill, makes his trade-mark a part of his capital in business, and thus acquires a property right in it, which a court of equity will protect against all forms of commercial piracy." As was said by the Court of Appeals in the case of *Fischer* v. *Blank* (138 N. Y. 244), " The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates." That these labels are sufficiently close within this rule, we think is established, both by an inspection of them and by the evidence, and I cannot but think that these defendants have endeavored to obtain by unfair means a share of the plaintiff's business. This conclusion is based upon the affidavits and proof before the court on this matter. Upon the trial a different state of facts may appear which would justify another result. When the witnesses are subject to cross-examination and when the court has the benefit of their presence, a much better conclusion as to the reliability of the testimony can be had. We do not wish to conclude the court below on the trial as to the facts, but to hold that upon these affidavits we think the injunction should have been granted.

The order appealed from should be reversed, with ten dollars costs and disbursements, and an injunction granted restraining the defendants from using the label referred to in the complaint, with ten dollars costs, upon giving an undertaking in twenty-five hundred dollars.

Rumsey and McLaughlin, JJ., concurred; Van Brunt, P. J., and Hatch, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion for injunction granted, with ten dollars costs, upon applicant giving an undertaking in twenty-five hundred dollars.