Gotham Silk Hosiery Co., Inc., Appellant, *v.* Philip Reingold and Another, Trading as " The Reingold Hosiery Co.," Respondents.

First Department, March 30, 1928.

**Trade-marks and trade names — unfair competition — action to restrain defendants from using hosiery box in imitation of plaintiff's box and from using trade-mark " Gold Mark " as simulation of plaintiff's trade-mark " Gold Stripe "— defendants are guilty of unfair competition in use of box — Appellate Division bound by its prior decision on motion for preliminary injunction — defendants not restrained from using their trade-mark.**

The plaintiff, a manufacturer of hosiery, seeks an injunction restraining the defendants from using a hosiery box in imitation of the plaintiff's hosiery box and from using their trade-mark " Gold Mark " as a simulation of plaintiff's trade-mark " Gold Stripe." The facts developed at the trial are the same as those that appeared on an application for a temporary injunction. The evidence shows that the defendants have endeavored to simulate plaintiff's box and the color scheme and marking thereon. Furthermore, the Appellate Division is bound by its prior decision on appeal from an order denying plaintiff's motion for a temporary injunction on which it reversed the order and held that the defendants were guilty of unfair competition.

While the defendants may be restrained from using a box similar to the plaintiff's hosiery box they will not be restrained from otherwise using their trade-mark, " Gold Mark."

Appeal by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 15th day of June, 1927.

*Frank C. Laughlin* of counsel [*Abraham I. Spiro* and *William Felstiner* with him on the brief; *Spiro & Felstiner*, attorneys], for the appellant.

*Ben Herzberg* of counsel. [*Max D. Steuer*, attorney], for the respondents.

O'Malley, J. The action is in equity to enjoin unfair competition in the use by defendants of (1) a hosiery box in imitation of plaintiff's box; and (2) the words " Gold Mark " as a simulation of plaintiff's trade-mark " Gold Stripe."

On appeal from the order denying plaintiff's motion for an injunction *pendente lite*, we reversed and granted partial relief by prohibiting the use by the defendants of the box against which complaint was made or of any box simulating those used by the plaintiff, in conjunction with the words " Gold Mark." (213 App. Div. 237.) The opinion in part reads: " The conclusion that defendants intended and now intend unfairly to compete

with the plaintiff is irresistible in view of the box adopted by them the first of this year. Descriptively this box is essentially the same as the one that has been used by the plaintiff for the past four years. It is true that one can take these two boxes and point out differences in detail, but it is only in detail that the differences lie. The very differences, however, are earmarked with intent to deceive, as for example: the vertical stripe of defendants' box is of the same color, blend and width, and in the exact position as the diagonal stripe on plaintiff's box; the gold field of the cover of the plaintiff's box is relieved by a black oblong with gold letters above, and white ovals with black letters below; defendants' box, correspondingly, has a black circle with gold letters above and a white oblong with black letters below. * * * As to the right to enjoin defendants' use of the name ' Gold Mark,' disassociated from the boxes which defendants have recently adopted, we are unwilling to decide upon the papers now before us. That question may well wait until the trial of the action. As to the boxes, however, we entertain no doubt at all. They are an obvious, palpable imitation of plaintiff's boxes, unquestionably adopted with a view to deceiving purchasers and appropriating plaintiff's trade."

The record of the trial before us tends to confirm, rather than to alter this view. The evidence is substantially as it was on the preliminary motion. Much of it presents no conflict. The trademark acquired by the plaintiff from its predecessor in title, Gotham Silk Manufacturing Company, was first used in 1911, and finally registered in 1913. Continuously from that time and until it was acquired by the plaintiff in 1925, it had been employed by plaintiff's predecessor in title. For the purposes of this appeal the plaintiff and its predecessor will be referred to as the plaintiff.

The term " Gold Stripe " had its origin in the adoption by the plaintiff of the process of putting a gold thread in the fabric of the stocking at a point where the lower end of the welt joins the top of the stocking. Between 1913 and 1925, when this action was begun, the silk hosiery manufactured by the plaintiff had become well known as " Gold Stripe " or " Gotham Gold Stripe " hosiery, and purchasers usually asked for the product by these or similar identifying descriptions. Besides operating many factories the plaintiff maintained retail stores and in addition sold at wholesale direct to other retail dealers. It stressed or featured sales in boxes containing three pair of stockings and since about the year 1921 it used an attractive box in colors of black and gold, more particularly described in the opinion on the previous appeal. In addition, it featured this box in window displays in its own stores

and advocated similar displays by other retail dealers. It distributed about 500 large replica or dummy boxes for show window and counter display advertising purposes. There appeared on this box the words, "Buy by the Box." The plaintiff also furnished glass signs, cards and counter signs to its customers for a like purpose. It also stressed the importance of displaying its merchandise in the original boxes, not only in show window displays, but also on the shelves of retail stores. It advertised extensively and at great expense, both its trade-mark and its box in connection therewith.

The extent of its business thus built up and established is readily apparent from the figures submitted upon the trial. From these it appears that from 1921 to 1924 it used and distributed to its wholesale and retail customers, 13,729,200 pairs of silk stockings, packed in 4,433,000 boxes, and from 1925 to 1926, when the box, Exhibit 9, was in use, it sold 16,019,000 pairs in 5,339,000 boxes. The last box referred to was substantially the same as any one of the three or four different boxes used by the plaintiff after 1921, except that the wrapper thereon was in embossed, rather than in plain paper, and there was a slight but immaterial rearrangement in coloring and lettering. Defendants upon the trial claimed at one time that this slight alteration in Exhibit 9, made after the commencement of this action, was for the purpose of making more striking the similarity between the plaintiff's boxes and those used by the defendants. This contention failed of merit, however, and was not pressed upon the argument. Plaintiff's box in use at the time of the trial was substantially identical with the box in use at the commencement of the suit.

The defendants, who are jobbers and not manufacturers, began the use of their trade-mark in 1917. It is explained as a combination of the last four letters of the names of the two defendants, Reingold and Newmark. It was duly registered and used by the defendants without complaint from the plaintiff until combined with the box simulating in appearance that of the plaintiff. This was in January, 1925. Prior to that time the defendants had used red and gray boxes, practically plain in color, except for the use of their trade-mark in gold lettering on the red box, and gold lettering on a purple label on the gray box. These were stock boxes furnished to the defendants by the hosiery mills without charge.

Suddenly, and for reasons hereinafter referred to, the defendants changed from these stock boxes which were furnished gratis, to gold and black boxes, the wrappers of which cost ten dollars a thousand. The defendants claimed and gave evidence tending

to show that the change was made without reference to plaintiff's boxes and solely upon the suggestion of a representative of the firm which had·been furnishing the defendants with labels and hosiery bands. It is asserted that the matter of getting up a design for the new wrapper was left entirely to a designer in the employ of this firm and that the resulting idea in black and gold stripes was entirely his. However this may be, the evidence shows that the firm which engaged the designer had manufactured labels for the plaintiff and was familiar with the design of plaintiff's wrapper. While the designer himself, who testified on behalf of the defendants, disclaimed previous familiarity with the plaintiff's wrapper, such fact, if true, would not relieve the defendants, if the plaintiff's wrapper in fact was simulated.

The only reason for this change advanced by the defendants was an increase in their business and their desire to have a more attractive box. They attached no importance whatever to the box as an inducement or cause for sale to the ultimate purchaser and took the position throughout the trial that customers would purchase without reference to or regard to the box and only upon an examination of the merchandise itself. The defendant Reingold testified that so far as the defendants were concerned any color that would make an attractive box would have been just as satisfactory, and that the volume of the defendants' sales would have been the same whether black or white boxes were in use.

We think the acts and conduct of the defendants in this respect belie their words. If the appearance of the box was of so little consequence, the defendants offer no adequate explanation of why, when complaint against the use of their present box was made, accompanied by a request that its use be discontinued, they did not at once comply with plaintiff's demand, and either return to the use of their former box, or at least offer to adopt an equally attractive design in some other color combination. Instead of following either of these courses, they have seen fit to resist a costly litigation. From this alone the conclusion follows that the defendants' attempted explanation does not in fact explain.

But there is other evidence condemnatory of the defendants' use of this box in connection with their trade-mark. One of the plaintiff's most popular styles was known as No. 536. In 1923 the defendants adopted a style known as No. 635, the exact reverse of No. 536. This number had a prominent place on the defendants' box cover, directly under its trade-mark. The plaintiff as early as 1915 had used in connection with its trade-mark and advertising, the slogan, " Silk Stockings That Wear." In 1923 the defendants adopted in connection with their product, the phrase, " Will Wear

Well." Their attempt · to show that subsequently the plaintiff used in connection with their trade-mark and advertising the word " Wear " three times repeated, for the purpose of again strengthening its case by showing further similarity between its advertising and the defendants' method of doing business, was clearly not sustained by the evidence.

There was also evidence tending to show that in February, 1925, just before this suit was instituted, the defendants, who had theretofore been operating under the trade name and style of Reingold Hosiery Company, filed a certificate indicating their intention of thereafter doing business under the name of Gold Mark Hosiery Company. This change would have given the defendants' firm a name more nearly like that of the plaintiff, the Gotham Silk Hosiery Company. Moreover, plaintiff was accustomed to advertise its product under the name " Gold Stripe Hosiery," or " Gold Stripe Stockings." The defendants' explanation of the purpose of this proposed change, namely, to form a new company, is not satisfactory. The new proposed company was to be a partnership composed only of the two defendants who were the old partnership of the Reingold Company, without change of office or the nature of its business. It was still to continue the sale of " Gold Mark " hosiery.

There was also evidence tending to show that the defendants in their store from which· they sold at wholesale at least on one occasion maintained a window display not unlike that advocated by the plaintiff for its customers, in which they exhibited their boxes, and prominently displayed their trade-mark.

Plaintiff called numerous witnesses whose testimony was to the effect that the type of box plaintiff used was distinct and of great importance in the ultimate sale of its product; that plaintiff's merchandise was usually displayed in retail stores in windows, show cases and on shelves in the original boxes supplied by it, and that usually similar products of other manufacturers sold by the retailers were sold from stock boxes. The defendants called several witnesses who gave testimony tending to show that when retailers handled plaintiff's and defendants' product, both were exhibited in original and not stock boxes; that thus there was no difference in method of display and that the " Gold Stripe " and " Gold Mark " stockings were each sold from the original boxes; and further, that in their experience there never had been confusion and that purchases were usually made from an examination of the stockings themselves and not with reference to the boxes. The defendants' evidence also tended to show that the plaintiff's product was usually called for under the name of " Gold Stripe "

or similar identifying descriptions. But the two boxes in question are before us for examination and they present what seems to us the best possible evidence as to likelihood of confusion.

In view of the foregoing we think there can be little doubt that the defendants not only attempted to, but succeeded in a large degree, in adopting a box wrapper as nearly like plaintiff's as it was possible to do without exact duplication. In fact the trial justice indicated on the motion to dismiss that the defendants may have attempted, and probably did attempt, to copy the style of plaintiff's box. Even defendants' trial counsel at one time during the course of the trial stated that the similarity was so marked that even a blind man could see it. While this was asserted at a time when the defendants were attempting to show that the plaintiff had, after the commencement of suit, altered the appearance of their box so as to make it more like defendants, a theory apparently later abandoned, it may be accepted as an incident tending to establish plaintiff's claim of simulation.

It was the court's view, however, that the duplication was not sufficiently clear so as to constitute unfair competition under the authorities. With his conclusion we are unable to agree. It was not necessary that evidence of actual confusion be presented, so long as there was evidence of sufficient probative force to show liability to deception. (*T. A. Vulcan* v. *Myers*, 139 N. Y. 364, 367.) The plaintiff's evidence when considered as a whole seems to fairly preponderate in favor of its claim that the box wrapper adopted by the defendants, used as it is in connection with its trade-mark, is calculated to and likely to mislead a purchaser into believing that she is purchasing plaintiff's product, when, in fact, she is purchasing that of the defendants.

Moreover, as already pointed out, the evidence does not differ in any material respect from that presented to us on the motion for an injunction *pendente lite*. In these circumstances we are bound by our former decision.

We have not overlooked the evidence of the defendants to the effect that the colors black and gold are frequently employed in the design of wrappers for boxes and particularly for those used in the sale of hosiery. If the mere use of this color combination were the only objection to defendants' box, they would perhaps be unobjectionable. However, here we have simulation in the manner of use. In addition to this color combination there is used in connection with it the defendants' trade-mark, similar in some degree to that of the plaintiff's, and it is the combination of these features that creates a general result likely to confuse.

To the extent already indicated we think the plaintiff was

clearly entitled to relief. But in so far as its complaint seeks to enjoin the defendants' use of their trade-mark as such, we think the decision below was proper. No pretense of confusion or infringement was made by plaintiff until the defendants' simulation of its boxes in 1925. For eight years the defendants by the use of red and gray boxes had used their trade-mark, presumably to the knowledge of the plaintiff. At least its use provoked no protest. In these circumstances, and upon all the evidence, we think plaintiff has not shown sufficient to invoke in its behalf the aid of equity in respect to the defendants' trade-mark alone.

It follows that the judgment should be reversed, with costs, and judgment for the plaintiff granted to the extent herein indicated.

DOWLING, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment reversed, with costs to appellant, and judgment for plaintiff ordered to the extent indicated in opinion. Settle order on notice. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.