Buick Motor Company and Another, Plaintiffs, *v.* Buick Used Car Exchange, Inc., Defendant.

Supreme Court, New York County, May 19, 1928.

**Trade-mark and trade names — infringement — action for permanent injunction restraining defendant from using name " Buick " in connection with its used car business — plaintiffs granted defendant's request to use word " Buick " in its corporate title under certain conditions — claim that defendant has failed to comply with conditions, not substantiated — scope of permanent injunction limited to provisions of preliminary order.**

Defendant, to whom plaintiffs gave their consent to the use of the word " Buick " in connection with its used-car business under certain restrictions, in reliance upon which defendant has been doing business for several years as " Buick Used Car Exchange, Inc.," should not be restrained from employing its corporate title in its business, in the absence of proof showing that it has disobeyed the restrictions which accompanied the grant of permission; therefore, the scope of the permanent injunction must be limited to that of the preliminary order, except that, in addition, the defendant should be restrained from employing the words " Used Car Department " on any of its stationery, or otherwise.

Action to restrain the defendant from using the plaintiffs' trade name.

*John Thomas Smith* [*H. M. Hogan* of counsel], for the plaintiffs.

*Vogel & Sheldon* [*J. S. Sheldon* and *Marcel Levy* of counsel], for the defendant.

Frankenthaler, J. Plaintiffs, Buick Motor Company and General Motors Corporation, seek a permanent injunction restraining defendant from using the name " Buick " in connection with its business and from representing that it is in any way connected with the plaintiff Buick Motor Company. A motion for a preliminary injunction was granted to the extent of enjoining the defendant (1) from employing the trade-marks " Buick " registered by plaintiffs or facsimiles thereof; (2) from representing that it was connected with plaintiffs or the authorized agents or dealers of the latter, and (3) from displaying or advertising its corporate title unless the word " Used " immediately followed the word " Buick " with the words " Not connected with Buick Motor Company or its authorized dealers " directly underneath in type half the size of defendant's corporate name. The scope of this order was substantially the same as that of the conditions which plaintiffs had imposed when they granted defendant's request to be permitted to use the word " Buick " in its corporate title shortly after its incorporation, early in 1925. The very fact that defendant deemed

it necessary to obtain plaintiffs' consent, and that it agreed to comply with the terms upon which it was granted, confirms what seems to be too plain to require discussion, viz., that the untrammeled use of the name " Buick " in connection with the sale of used cars was likely to cause confusion in the public mind. Undoubtedly many prospective purchasers of used cars would be prone to believe that the Buick Motor Company was sponsoring their sale and that the Buick reputation would insure good values and fair dealing. Although the Buick Motor Company was apparently not in the business of selling used cars, it was entitled to protect the good will which went with the name " Buick " against the possibility of harm only too likely to ensue if any dissatisfied customers of the defendant were to hold plaintiffs responsible for their troubles. It had the right, moreover, to keep others from using the name which its assignor had assumed as early as 1904, so that it might have the full benefit thereof should it choose subsequently to deal in used cars itself. (*Ford Motor Co.* v. *Cady Co., Inc.,* 124 Misc. 678; mod., 216 App. Div. 786.) As to the argument that defendant was free to use the name " Buick " in connection with the sale of used cars because plaintiffs dealt only in new ones, it need only be stated that even if this proposition be correct in the case of non-competing products, it cannot properly be applied here. New and used cars are too closely related in character and in business dealings to permit of treating them as occupying entirely different fields. The court can take judicial notice, for example, of the practice on the part of companies selling new cars to take used cars in partial exchange, which they are obliged to dispose of. In *Akron-Overland Tire Co.* v. *Willys-Overland Co.* (273 Fed. 674) the court used language which is quite pertinent here (pp. 675, 676): " We note the earnest contention of defendant's counsel that the case was one where there could be no unfair competition on the part of the defendant, because the defendant was not in business competition where the parties were not in competition in the same kind of business. In view of this contention we deem it proper to say the matter has had our serious consideration, and we find no ground to convict the court below of error, either in its use of authorities or in other regards; for, while it may be conceded that the plaintiff company manufactures automobiles and the defendant does not, and while the plaintiff does not make or sell automobile tires, and the defendant retreads and sells tires, and in exact terms the two do not compete in these particular things, yet the fact remains that the business of both is so connected with automobiles that the public, in buying the stocks, securities and retread tires of the defendant company, by the use of the word ' Overland ' in con-

nection therewith, will, by such descriptive word, be led to believe it is buying property or articles owned or dealt in by the plaintiff or one of its subsidiary companies. That the plaintiffs had in the word ' Overland ' a good will of high reputation and great value in connection with automobiles cannot be gainsaid. That the defendant's use of the word ' Overland,' in connection with the sale of its retread tires and its stocks and securities, would enable it to share in the plaintiff's good will and reputation, also cannot be gainsaid. That such use of the word ' Overland ' by the defendant would breed confusion and misunderstanding in the minds of the public is foreshadowed by what did happen in the way of third parties confusing and connecting the defendant and its acts with the plaintiff company, and even holding the plaint'ff accountable for such acts. Indeed, it is manifest that under the facts of this case the maintenance by the plaintiff of the good will attributed to Overland business and products would, in the future, be determined, not alone by what the plaintiff did to uphold the standard of that good will, but by what the defendant might do by failure to uphold such reputation and maintain such good will." Similarly in *Rogers, Ltd.,* v. *Majestic Products Corporation* (23 F. [2d] 219) the court pointed out that products did not have to be identical and in actual competition to permit of the granting of injunctive relief, saying at page 220: " Nor is the fact that silver plate and silver polish have different descriptive properties, and do not enter into competition decisive of the issue. That branch of the law to which has been given the name ' unfair competition ' has not developed along rigid or narrow lines. It affords relief wherever, by reason of an unjustifiable act, the goods of one party to the suit will probably be accepted by the purchasing public as the goods of another, for by such act the good will of the latter is put, to the latter's injury, at the mercy of the former. The goods capable of being so passed off are not limited to those that are identical or even to those that have the same descriptive properties. Many articles, quite dissimilar in their appearance, properties, and use, may nevertheless bear such relation to each other and be so associated in the mind of the public that confusion and deception touching their respective origins will follow as a natural consequence, if their dress or marks are similar. *Akron-Overland Tire Co.* v. *Willys-Overland Co.,* 273 F. 674 (C. C. A. 3); *Aunt Jemima Mills Co.* v. *Rigney & Co.,* (C. C. A. 2) 247 F. 407, L. R. A. 1918C, 1039; *Vogue Co.* v. *Thompson-Hudson Co.,* 300 F. 509 (C. C. A. 6); *Wall* v. *Rolls-Royce of America,* (C. C. A.) 4 F. (2d) 333; *Rosenberg Bros. & Co.* v. *Elliott,* 7 F. (2d) 962 (C. C. A. 3). Silver polish bears such relation to silver and is so associated with it that sub-

stantial identity of marks would inevitably, I think, create in the minds of the ordinary purchasers of the polish an impression that the origin of the two articles is identical." Moreover, it is a serious question whether plaintiffs could not protect their trade name and mark against use by another in a business *not closely akin* to that which they are engaged in. For example, in *Wall* v. *Rolls-Royce of America* (4 F. [2d] 333), the complainant, a manufacturer of automobiles and aeroplanes, was awarded an injunction against the use of the name "*Rolls-Royce Tube Company*" by defendant in its conduct of a mail order business for the sale of radio tubes. (See, also, "The Rational Basis of Trade Mark Protection," Harvard Law Review, vol. 40, 1926-1927, pp. 813 *et seq.*, and cases there cited.) The United States Supreme Court has apparently never passed upon the precise question, contenting itself with the following observations: " It may be true that in a case like the plaintiff's its rights would not be sufficiently protected by an injunction against using the marks upon goods of the same class as those to which the plaintiff now applies it and to which its registration is confined. Upon that we express no opinion." (*Beech-Nut Co.* v. *Lorillard Co.*, 273 U. S. 629, 632.) This had reference to plaintiff's contention in that case that "Beech-Nut," being the plaintiff's trade-mark and part of its corporate name, had become the plaintiff's badge and autograph so far that the public seeing the mark on any package of consumable goods would believe that the article was of the plaintiff's make and that, therefore, although the plaintiff did not manufacture chewing tobacco, it was entitled to enjoin the defendant from using the name "Beech-Nut" in connection with such manufacture. Whatever plaintiffs' rights may have been at the time of defendant's organization, the fact is that they consented to defendant's use of the word "Buick" with the specified limitations. They contend now that defendant has violated the conditions upon which their permission was given, but the evidence on this point fails to satisfy the court of the correctness of their position. The testimony as to actual deception was very meagre and unconvincing, while the only proof of other violations consisted of a concession by defendant's counsel that the defendant "sometimes omitted to insert the words ' no connection with the Buick Motor Company ' in its bills of sale, circulars and invoices." Yet, were it not for the consent granted to the defendant, it would be unnecessary to furnish proof of actual deception. The use of the identical name "Buick," the imitation of one of the trade-marks, and the addition of the words "Used Car Department" to defendant's corporate title (although it deals *only* in used cars), would be

sufficient basis for an inference that there is a strong probability of misleading the consumer and would entitle plaintiffs to an injunction. (*Gotham Silk Hosiery Co., Inc.,* v. *Reingold,* 223 App. Div. 260, 265.) Plaintiffs did, however, give their consent to defendant's use of the word " Buick," and in reliance thereon the latter has been doing business for several years as " Buick Used Car Exchange, Inc." It would be inequitable under the circumstances to deprive it of the right to employ its corporate title and thereby to destroy its business, unless it had forfeited that privilege by disobeying the restrictions which accompanied the grant of permission, particularly so where they are such as to insure plaintiffs comparative safety from public deception and consequent damage. As the court is not satisfied from the evidence that defendant did fail to comply with the conditions imposed, except in an occasional and unsubstantial manner, it is constrained, in finding for the plaintiff, to limit the scope of the permanent injunction to that of the preliminary order, except that in addition the defendant will also be restrained from employing the words " Used Car Department " on any of its stationery or otherwise. Submit findings on notice.