THE H. E. ALLEN MFG. CO., INC., Respondent, *v.* H. J. SMITH, Doing Business under the Firm Name and Style of H. J. SMITH & Co., Appellant.

Fourth Department, June 29, 1928.

*Richard R. Martin*, for the appellant.

*William Ross Lee*, for the respondent.

SEARS, J. The plaintiff manufactures and sells a product called " So-Bos-So." It is a liquid preparation used principally for keeping flies off cattle. Such preparations are known as " fly sprays." The term So-Bos-So was originally used for such a product by another concern to whose rights the plaintiff succeeded. The predecessor of the plaintiff had used this trade name from March 1, 1899. The plaintiff registered the term So-Bos-So as a trade-mark in the United States Patent Office on the 3d day of July, 1917. The plaintiff advertised its product throughout the country and built up a considerable business. Its sales, according to the testimony of its secretary and treasurer, aggregated 36,072 gallons in 1917; 46,017 in 1918; 40,272 in 1919 and 60,768 in 1920. The defendant before 1921 had been in the insecticide business. In 1920 he was engaged in selling a fly spray under the name of " Flies-Off." In 1921 he adopted the name of " E-Z-Bos " for his fly spray, the preparation being usable for the same purpose as was plaintiff's product. The defendant had the designation E-Z-Bos registered as a trade-mark in the United States Patent Office, October 4, 1921, as having been continuously used in his business since January 14, 1921.

Plaintiff's So-Bos-So was put up in oblong gallon cans, bearing yellow labels with black printing. Defendant's E-Z-Bos was put up in oblong gallon cans with yellow labels and black printing. The matter printed on the plaintiff's and defendant's labels was not the same, nor was the arrangement of the printing on defendant's labels sufficiently like that on plaintiff's to cause confusion between the two. E-Z-Bos was very little advertised; apparently, only by obscure notices in a few rural papers. There is considerable evidence in the record of confusion in the minds of customers between So-Bos-So and E-Z-Bos, but the record fails to disclose that E-Z-Bos was to any great extent passed off by the defendant or his employees on unsuspecting customers as So-Bos-So, or that his salesmen were urged to make it appear to be the same product, or that the salesmen did so. The only possible evidence in the record of any such attempt, other than the name used by defendant, and the size, shape and dress of his containers, lies in the statement of some witnesses to the effect that when they were previously employed by defendant to sell E-Z-Bos, they stated to customers

that E-Z-Bos was extensively advertised, and that E-Z-Bos was the fly spray which was nationally advertised, while So-Bos-So as a fact was the only fly spray that was extensively and nationally advertised. The foregoing is substantially all there is in the record to show unfair competition of the character called " passing off," that is, selling one's goods as the product of another, thus taking advantage of a competitor's trade name, reputation and good will. The balance of the evidence upon which plaintiff relies as a basis for relief relates to direct attacks upon the plaintiff's goods by false and disparaging representations and to dishonest methods of conducting business.

On the " passing off " branch of the case the plaintiff has been granted an injunction, not only against the use by the defendant of the term E-Z-Bos, but also against the use of the term " Bos " in any form. The injunction in these respects is too broad. An injunction should not be granted unlesss the terms are so similar as reasonably to mislead or deceive a purchaser into the belief that one product is the other. All possible mistake or confusion cannot be avoided. All that is to be regarded is such as would naturally occur. In our opinion the two trade names are sufficiently distinct so that mistake or confusion was not to be anticipated. The names bear to each other no closer resemblance than those considered in many cases where relief by injunction has been denied. (*Gotham Silk Hosiery Co., Inc.,* v. *Reingold,* 223 App. Div. 260; *Boyshform Brassiere Co., Inc.,* v. *Modishform Brassiere Co., Inc.,* 205 id. 14; *Feil Co.* v. *Robbins Co.,* 220 Fed. 650; *Sears, Roebuck & Co.* v. *Elliott Varnish Co.,* 232 id. 588; *Schield* v. *Jones,* 12 F. [2d] 325; *Franklin Knitting Mills, Inc.,* v. *Kassman & Kessner, Inc.,* 13 id. 319.) Nor is the syllable " Bos " the trade name adopted by the plaintiff. It is simply a part of the trade name, and not so distinct a part that the court can say that it may not be used by the defendant in other combinations. In these respects the injunction was unwarranted.

If the trial court had been of the opinion that the size, shape and dress of the containers were such that, taken in connection with the trade name, confusion or mistake was apt to occur, an injunction might have been granted against the use of containers of such size, shape and dress for the defendant's product in connection with the trade-name E-Z-Bos. (*Gotham Silk Hosiery Co., Inc.,* v. *Reingold, supra; Fischer* v. *Blank,* 138 N. Y. 244; *Colman* v. *Crump,* 70 id. 573; *Anargyros* v. *Egyptian Cigarette Co.,* 54 App. Div. 345; *Reckitt & Sons* v. *Kellogg,* 28 id. 111; *Day* v. *Webster,* 23 id. 601; *Boyshform Brassiere Co., Inc.,* v. *Modishform Brassiere Co., Inc., supra.*) It would also be within the power

of a court in connection with other injunctive relief, to restrain the defendant from representing that the plaintiff's advertising supported his product.

The defendant in 1921 instituted a campaign of false disparagement against the plaintiff's goods which he has continued to conduct. Salesmen were instructed to make false statements as to the efficacy of So-Bos-So, to tell prospective purchasers that they could be fined for selling it, and that any of the So-Bos-So product which they had on hand was subject to seizure by inspectors of the United States government. The defendant even caused to be printed two spurious documents, one purporting to be a bulletin of information about fly sprays, and the other containing analyses of fly sprays. Each dealt severally with So-Bos-So. Each fraudulently represented on its face that it was an official document of the United States Department of Agriculture. These were put into the hands of salesmen of defendant to be used discreetly and to be shown carefully to prospective purchasers in order to advance the interests of the defendant by destroying the trade and reputation of the plaintiff. These practices urged upon the salesmen with vigor were followed by them and, no doubt, worked injury to the plaintiff.

The defendant's campaign for business was also conducted on a different line, no less reprehensible, not by disparagement of the product of the plaintiff, but by using unscrupulous sales methods. Salesmen were urged to make any kind of promise to obtain orders. In the language of the defendant, the salesmen were urged to promise the " moon, stars and the sun " without regard to intention or possibility of fulfillment. They were urged to use bogus orders of retailers as bait for unsuspecting wholesalers. Such bogus orders were actually prepared and furnished to his salesmen by the defendant himself, and directions for using these are contained in his letters. The salesmen were urged to juggle the figures on the orders which they obtained, to raise the number of goods ordered upon the order slips. A few sentences from one of his letters to his salesmen (and it is by no means the only one of its kind in the record) will illustrate the disreputable character of the methods employed. He writes: " * * * And now for the ORDERS and lots of them. Let them come in plenty. Sharpen your pencil, use a worn out carbon sheet so customer's copy won't look too plain, get volume on these orders and have each one of them read 6 dozen somehow. I suggest leaving no copy with dealer, just forget conveniently to leave one, and if dealer asks for it, well, give it to him if you must but otherwise explain to him we never leave copies as we need them for our advertising department to follow up, etc.

In this way, dealer wont have anything for future reference to cite us or the jobber to. Yet we will have his signature. This is the big thing, his SIGNATURE. * * * By working this exactly as I have outlined we can do it. And don't say a word to anyone about it — no one. Just do it and sit tight. Keep quiet. By working it the way I want you to, your orders will swell to between 60 to 75 dozen weekly, easily. Go to it. A 2 can easily be made into a 6, a 3 into a 5, 4 to a 9. All figures can be juggled. I am so anxious for a multitude of jobbers' orders, I don't care what is done to land them. Go to it. Let me see a big change in your orders from now on."

The judgment which is here under review restrains the continuance both of the practice of false and fraudulent disparagement and of the practice of the dishonest business methods. The jurisdiction of the courts to restrain libels, including false disparagement of a competitor's goods, has been vigorously denied and asserted. In England the equity courts formerly refused such jurisdiction. (*Gee* v. *Pritchard,* 2 Swanst. 402 [where, however, the actual decision was on another point]; *Prudential Assur. Co.* v. *Knott,* L. R. 10 Ch. App. 142.) Now, however, the jurisdiction is fully recognized. (*James* v. *James,* L. R. 13 Eq. 421; *Walter* v. *Ashton,* L. R. [1902] 2 Ch. 282. See Dean Roscoe Pound's Equitable Relief against Defamation, 29 Harv. L. R. 640, 665; Nims on Unfair Competition [2d ed.], 475.) Conflict of view exists in the Federal courts. (*Kidd* v. *Horry,* 28 Fed. 773; *American Malting Co.* v. *Keitel,* 209 id. 351; *Emack* v. *Kane,* 34 id. 46; *Farquhar Co., Ltd.,* v. *National Harrow Co.,* 102 id. 714; *Adriance, Platt & Co.* v. *National Harrow Co.,* 121 id. 827.) In our own State the general tendency has been against allowing such jurisdiction. (*Brandreth* v. *Lance,* 8 Paige, 24; *Marlin Fire Arms Co.* v. *Shields,* 171 N. Y. 384; *Mauger* v. *Dick,* 55 How. Pr. 132.) Actions for unfair competition are not now confined to "passing off" cases. (*Witkop & Holmes Co.* v. *Great A. & P. Tea Co.,* 69 Misc. 90; *International News Service* v. *Associated Press,* 248 U. S. 215; *Montegut* v. *Hickson, Inc.,* 178 App. Div. 94.) In the opinion in *Burrow* v. *Marceau* (124 App. Div. 665) the following language is used: "As I understand it, there is no hard and fast rule by which it can be determined when the court will interfere by injunction to prevent what is practically a fraud upon a person engaged in business by the unfair methods of competition. Each case must depend upon its own facts, but where it is clearly established that an attempt is being made by one person to get the business of another by any means that involves fraud or deceit, a court of equity will protect the honest trader and restrain a dishonest one from carrying out his scheme."

The courts have been increasingly inclined to protect business interests even when such interests do not come within strict definitions of property. The judgment here in enjoining false and fraudulent disparagement protects the intangible but real relationship existing between a merchant and his usual customers — his " good will." *Brandreth* v. *Lance* (*supra*) and *Marlin Fire Arms Co.* v. *Shields* (*supra*) were not cases of unfair competition but suits against the publishers of libels. The unfortunate result of denying equitable relief, in such an instance as we have before us, illustrates the justice of Dean Pound's words (29 Harv. L. R. 640, 668): " In substance the traditional doctrine puts anyone's business at the mercy of any insolvent malicious defamer who has sufficient imagination to lay out a skillful campaign of extortion." (See, also, Clark's Equity, 311.) We, therefore, do not hold that the judgment was erroneous in enjoining the practice of false disparagement of plaintiff's product.

As to the final class of fraud, that is, dishonest business practice in general, such as making promises not intended to be kept and obtaining business by false representations as to orders already secured, and by the use of spurious written orders, and by falsifying other instruments, the wrong is too remote from the plaintiff, even though the fraud is practiced upon the plaintiff's customers, to warrant the granting of injunctive relief at the plaintiff's instance. The customers in such cases are wronged. Theirs (and the State's) must be the relief. The courts cannot regulate such trade practices at the instance of a competitor. We heartily condemn such business methods, but we find no grounds in precedent or reason for extending the jurisdiction so far as to enjoin them. Here, then, the judgment is erroneous.

In 1921 there was a great falling off in the plaintiff's sales. The amount of So-Bos-So sold that year was but 15,985 gallons. This falling off in business, according to the plaintiff's secretary and treasurer, was not attributable in the least to the tactics of the defendant. Plaintiff's sales in 1922 amounted to 28,937 gallons; in 1923, 13,454; in 1924, 18,440; in 1925, 9,232; in 1926, 7,121. From 1917 to 1920 the plaintiff is alleged to have made a net profit in the aggregate of $10,000. From 1922 to 1926 the plaintiff's losses are alleged to have been $31,241.17, in the aggregate. The defendant's sales from 1922 to 1924 averaged 75,000 gallons annually; in 1925, 125,000; in 1926, 62,500. The plaintiff's net profits before 1921 are found to have been at the rate of five cents a gallon. The referee calculated the plaintiff's damages as five cents a gallon on the total sales of the defendant from 1922 to 1926, amounting to $20,625, and found that the reputation and

good will of the plaintiff were damaged $10,000, and on this basis granted a judgment for $30,000. Damages cannot be found in so summary a fashion. This is not a technical infringement case. Damages are to be awarded solely for the wrong, the tort, and the damages must be confined to the losses actually suffered by the plaintiff. (*Straus* v. *Notaseme Co.*, 240 U. S. 179.) As was stated in *Dickinson* v. *Thum Co.* (8 F. [2d] 570), " there is no presumption of law or of fact that a plaintiff would have made the sales that the defendant made. In this case there is no sufficient, much less conclusive, evidence to show that plaintiff would have made all or any substantial part of the sales made by the defendant." There is no basis whatever for the finding of $10,000 general damages to the plaintiff's business, reputation and good will.

For these reasons the judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and a new trial granted, with costs to appellant to abide event.