J. C. PITMAN & SONS, INC., and J. C. PITMAN & SONS SALES CORPORATION, both corporations duly organized under the laws of Massachusetts,

Complainants,

*vs.*

JAMES F. PITMAN, ALFRED T. PITMAN, HERBERT E. WILLIAMS, RALPH S. GROMANN, PITMAN MANUFACTURING COMPANY, ASSOCIATED MANUFACTURERS, INC. and HOLDERLE BROTHERS, INC.,

Respondents.

PITMAN MANUFACTURING COMPANY,

Cross Complainant,

*vs.*

J. C. PITMAN & SONS, INC., and J. C. PITMAN & SONS SALES CORPORATION,

Cross Respondents.

*New Castle, June 12, 1946.*

*Arthur G. Logan,* of Logan, Duffy and Boggs, for Pitman Manufacturing Company.

*Daniel F. Wolcott,* of the office of Southerland, Berl & Potter, for J. C. Pitman & Sons, Inc. and J. C. Pitman & Sons Sales Corporation.

HARRINGTON, Chancellor: This case was heard on a general demurrer to the cross complainant's bill seeking to enjoin the publication of alleged trade libels and unfair

and groundless threats to sue customers and prospective customers of Pitman Manufacturing Company should they purchase its products. Pitman Manufacturing Company is a Delaware corporation, doing business in Atlanta, Georgia, and is engaged in the manufacture and sale of what is known as a "Deep Fat Fryer". That device is advertised and sold under the name and label of "Pitman Rapid Fryer", and an application for a patent has been filed in the United States Patent Office. Both J. C. Pitman & Sons, Inc. and J. C. Pitman & Sons Sales Corporation are corporations of the State of Massachusetts, doing business in Lynn, Massachusetts. At the time the cross complainant began the manufacture and sale of Deep Fat Fryers, J. C. Pitman & Sons, Inc., and others, were engaged in the manufacture and sale of similar food preparing devices, and J. C. Pitman & Sons, Inc., manufactured and sold a very large percentage of all deep fat frying equipment used in the United States. The relief sought is based on certain letters which were sent to the trade, copies of which are attached to the cross bill and are designated as "Exhibit A" and "Exhibit B".

"EXHIBIT 'A'

"J. C. Pitman & Sons Sales Corp.,
 "711 Broad Street,
 "West Lynn, Mass.

"Gentlemen:

"Recent inquiries received from many of our old and valued customers indicate that they have been led to believe that Pitman Manufacturing Company of Atlanta, Georgia is associated with J. C. Pitman & Sons, Inc., of Lynn, Massachusetts in the production and sale of deep fat fryers.

"So that there will be no misunderstanding in the matter the J. C. Pitman & Sons, Inc., wishes to notify you that it has absolutely no affiliation whatsoever with the Pitman Manufacturing Company of Atlanta, Georgia.

"The famous 'Pitco Frialators' are manufactured exclusively by the J. C. Pitman & Sons, Inc. of Lynn, Massachusetts and sold exclusively by the J. C. Pitman & Sons Sales Corporation of Lynn, Mass-

achusetts. Any association of the name 'Pitman' with other than the 'Pitco Frialator' is an attempt to confuse the trade and introduce a copy of our 'Pitco Frialator' at the expense of our National Good Will advertising.

"Investigation discloses the majority of the incorporators of the Pitman Manufacturing Company to be the same as those of the Associated Manufacturers, Inc. of Washington, D. C. To any who have done business heretofore with this company, we feel this information will suffice.

"You may be interested to know that this entire matter is now under consideration by our legal department for appropriate action.

"Now that this terrible war has been successfully concluded we shall be in full production and enthusiastically anticipate a resumption of business in the future which has made our past relations so pleasant."

"EXHIBIT 'B'

"Greenhood, Cunningham & Eggleston,
  "913 Beacon Bldg.,
  "6 Beacon Street
  "Boston 8, Mass.

"October 9, 1945.

"Gentlemen:

"You have been previously advised by our clients, J. C. Pitman & Sons, Inc., of Lynn, Mass., against confusion resulting from the use of the word Pitman by a corporation other than J. C. Pitman and Sons, Inc. Recent correspondence from the customers of J. C. Pitman and Sons, Inc., requesting further information shows that this confusion has substantially increased.

"As you know, J. C. Pitman and Sons, Inc., of Lynn, Mass., are the inventors and the original manufacturers of the nationally famous Pitman Deep Fat Fryer, also known as the Pitco Frialator, which you have merchandised so successfully through the years. The J. C. Pitman and Sons Sales Corp., also of Lynn, Mass., distributes these Fryers to the trade.

"A new corporation called Pitman Manufacturing Company has recently been organized in the State of Delaware, and proports to have an office in Atlanta, Georgia.

"This outfit has started a campaign to confuse and deceive the trade;—by unlawfully using the name Pitman;—by unlawfully attempting to copy the genuine Pitman Fryer;—by unlawfully producing the advertising matter of J. C. Pitman and Sons, Inc.;—and

by unlawfully attempting to force their inferior product on the trade in place of the genuine Pitco Frialator.

"It has become necessary to resort to court proceedings to stop this obvious deception; to stop the unlawful sale of this new Fryer, and to stop this new concern from capitalizing unlawfully on the good will honestly built up by J. C. Pitman and Sons, Inc., of Lynn.

"Any legitimate concern like yourself that buys or sells the products of this outfit might unwittingly become involved in this litigation—which would be very costly to you, and very regrettable to J. C. Pitman and Sons, Inc.

"We are informed that the relations between you and the old established firm of J. C. Pitman and Sons, Inc., of Lynn, Mass., have always been most satisfactory.

"We therefore, advise you do not deal with this new corporation until its rights to manufacture and your right to buy or sell this questionable product is decided upon by the courts."

Exhibit "A" was written and sent out by J. C. Pitman & Sons, Inc., and Exhibit "B" was written and sent out by a firm of Boston lawyers representing it. The bill alleges that immediately after the cross complainant had engaged in the manufacture and sale of deep fat fryers, J. C. Pitman & Sons, Inc. and J. C. Pitman and Sons Sales Corporation circularized the trade with "letters containing false, fraudulent, deceptive, libelous and unfair statements and fraudulent threats to involve prospective customers (of cross complainant) * * * in costly litigation."

The first statement complained of is in the first paragraph of Exhibit "A":

"Recent inquiries received from many of our old and valued customers, indicate that they have been led to believe the Pitman Manufacturing Company of Atlanta, Georgia, is associated with J. C. Pitman & Sons, Inc. of Lynn, Massachusetts in the production and sale of deep fat fryers."

The cross complainant alleges that this statement created an impression in the trade that the cross complainant was and is "dealing unfairly."

The second statement is in the third paragraph:

"The famous 'Pitco Frialators' are manufactured exclusively by the J. C. Pitman & Sons, Inc. of Lynn, Massachusetts and sold exclusively by the J. C. Pitman & Sons Sales Corporation of Lynn, Massachusetts. Any association of the name 'Pitman' with other than the 'Pitco Frialator' is an attempt to confuse the trade and introduce a copy of our 'Pitco Frialator' at the expense of our National Good Will advertising."

The cross complainant alleges that by this statement the cross defendants sought to create an impression in the trade that the Pitman Manufacturing Company was and is "dealing unfairly."

The third statement complained of is in the fourth paragraph:

"Investigation discloses the majority of the incorporators of the Pitman Manufacturing Company to be the same as those of the Associated Manufacturers Inc. of Washington, D. C. To any who have done business heretofore with this company, we feel this information will suffice."

The cross complainant alleges that this statement by innuendo libels it.

The following statements in Exhibit "B" are complained of as libelous: The first of these is in the first paragraph:

"You have been previously advised by our clients, J. C. Pitman and Sons, Inc., of Lynn, Mass., against confusion resulting from the use of the word Pitman by a corporation other than J. C. Pitman and Sons, Inc. Recent correspondence from the customers of J. C. Pitman and Sons, Inc., requesting further information shows that this confusion has substantially increased."

The cross complainant alleges that this statement was false in stating that confusion in the trade had substantially increased due to the use of the word "Pitman" by the cross complainant, and that said statement was made for the purpose of creating an impression in the trade that Pitman Manufacturing Company "was and is dealing unfairly."

The second statement complained of is in the fourth paragraph:

"This outfit has started a campaign to confuse and deceive the trade;—by unlawfully using the name Pitman;—by unlawfully attempting to copy the genuine Pitman Fryer;—by unlawfully producing the advertising matter of J. C. Pitman and Sons, Inc.;—and by unlawfully attempting to force their inferior product on the trade in place of the genuine Pitco Frialator."

The cross complainant alleges that this statement was made pursuant to a scheme, plan and conspiracy to suppress competition and was false in stating that by the use of the name "Pitman", by attempting to copy the cross defendants' product and advertising matter, and by attempting to force its inferior product on the trade in place of that of the cross defendants, it had started a campaign to confuse and deceive the trade. It also alleged that this statement constituted a "trade libel", and was for the purpose of disparaging the cross complainant and its merchandise, thereby decreasing its business and increasing the business of the cross defendants.

The third statement complained of is in the fifth paragraph:

"It has become necessary to resort to court proceedings to stop this obvious deception; to stop the unlawful sale of this new Fryer, and to stop this new concern from capitalizing unlawfully on the good will honestly built up by J. C. Pitman and Sons, Inc., of Lynn."

The cross complainant alleges that this statement was pursuant to a scheme and plan of the cross defendants, by which they sought to create the impression that a decree had been entered in these proceedings enjoining the cross complainant from continuing to sell its new "Pitman Rapid Fryer", and thereby deceived prospective customers of the cross complainant and interfered with its relations with its customers and other members of the trade.

The fourth statement complained of is in the sixth paragraph:

"Any legitimate concern like yourself that buys or sells the products of this outfit might unwittingly become involved in this litigation—which would be very costly to you, and very regrettable to J. C. Pitman and Sons, Inc."

The cross complainant alleges that this statement was pursuant to a scheme and plan and was an attempt by the cross defendants to intimidate, coerce and deceive prospective customers of cross complainant by threatening them with litigation for buying and selling the cross complainant's product when they knew that no ultimate customer buying, or any dealer selling, the cross complainant's product could lawfully become involved in this litigation.

The fifth statement complained of is in the last paragraph:

"We, therefore, advise you do not deal with this new corporation until its right to manufacture and your right to buy or sell this questionable product is decided upon by the courts."

The cross complainant alleges that this statement was a further threat of litigation made with the intent to destroy its business. The bill also alleges (1) that, by reason of the letters sent to the trade, the cross complainant has lost business; (2) that the cross defendants threaten to continue to send such letters; and (3) that, unless enjoined by this court, the damage to the cross complainant will increase, and become irreparable.

Injunctive relief is then sought: (1) Because the defendants have published, and intend to continue to publish, trade libels against the cross complainant; and (2) because some of the publications complained of constitute unfair business competition, accompanied by trade libels.

In an action at law for libel the publication relied on is usually alleged to be malicious, but when that allegation would be appropriate it seems that the use of such words as "false", "wrongful", or some such equivalent word, would be sufficient. *Gordon v. News-Journal Co.*, 6 *W. W. Harr.* (36 Del.) 396, 176 A. 657. The defendants tacitly concede that the same general rule applies in equity. See *Marlin Firearms Co. v. Shields*, 171 *N.Y.* 384, 64 *N.E.* 163, 59 *L.R.A.* 310. By their demurrer, they admit that they caused the letters to be sent out to the trade, and that some of

the statements contained therein were false. Moreover, for the purpose of this argument the cross defendants concede that all of the statements relied on in both types of letters were libelous. They deny, however, that a court of equity will enjoin the continued publication of a mere trade libel and that any accompanying acts of unfair business competition appear. If any of the statements contained in the sixth and eighth paragraphs of the second letter (Exhibit "B") constituted attempts to intimidate possible customers of the complainant by threatening suits should they buy or sell complainant's product, the defendants, necessarily, concede by their demurrer that such threats were baseless and that no suits were ever intended.

Furthermore, a general demurrer must be overruled if a cause of action can be based on any statements complained of in the bill. *Hilford, Adm'r, v. Way, et al.,* 1 *Del. Ch.* 342; *Town of Seaford v. Eastern Shore Pub. Service Co.,* 22 *Del. Ch.* 1, 191 *A.* 892.

Prior to the common law *Procedure Act of* 1854 (17 & 18 *Vict. c.* 125) and the *Judicature Act of* 1873 (36 & 37 *Vict. c.* 66), the English Court of Chancery would not enjoin the publication of a mere trade libel. *Prudential Assur. Co. v. Knott, L.R.,* 10 *Ch.* 142. That conclusion was not reached without some conflict in the reported cases (see *Dixon v. Holden, L.R.,* 7 *Eq.* 488; *Newell, Libel and Slander,* (4th ed.) § 198), but the *Prudential Assurance Company* case overruled the earlier cases, and thereafter the only remedy of the injured party for libelous and false disparaging written statements, with respect to his business, was by a tort action at law. *Prudential Assur. Co. v. Knott, supra.* In England, however, prior to 1873, if there were some other ground for equitable relief, the fact that the publication was also libelous would not prevent the issuance of an injunction. *Prudential Assur. Co. v. Knott, supra.* But while the right to enjoin a trade libel is now established in that country, it will only be exercised in plain cases of irreparable injury.

*Collard v. Marshall*, 1892, 1 *Ch.* 571; *Loog v. Bean, 26 Ch. Div.* 306. It is unnecessary to consider the peculiar statutory provisions involved, and whether there was any real enlargement of the inherent powers of equity. See 4 *Pomeroy. Eq. Jur.*, (5th Ed.) § 1358; *Marlin Firearms Co. v. Shields,* 171 *N.Y.* 384, 64 *N.E.* 163, 59 *L.R.A.* 310.

When no breach of trust or of contract rights appears the American courts have almost uniformly followed the English rule prior to 1873, and have refused to enjoin mere trade libels. *Boston Diatite Co. v. Florence Mfg. Co.,* 114 *Mass.* 69, 19 *Am. Rep.* 310; *Marlin Firearms Co. v. Shields, supra; Whitehead v. Kitson,* 119 *Mass.* 484; *Singer Mfg. Co. v. Domestic Sewing Machine Co.,* 49 *Ga.* 70, 15 *Am. Rep.* 674; 1 *Pomeroy Eq. Jur.*, (5th Ed.) § 320, *Note; 4 Pom. Eq. Jur.*, (5th Ed.) § 1358; *Newell, Libel and Slander,* (4th Ed.) § 198. When, however, a court of equity has jurisdiction on some other ground, the American courts will also usually enjoin the continued publication of a trade libel incident thereto. That is true when the libel is accompanied by some act of unfair business competition, if irreparable damage is imminent. *Allen Mfg. Co. v. Smith;* 224 *App. Div.* 187, 229 *N.Y.S.* 692; *Maytag Co. v. Meadows Mfg. Co.,* (7 *Cir.*) 35 *F. 2d* 403; *Edison v. Thomas A. Edison, Jr., Chem. Co.,* (*C. C. Del.*) 128 *F.* 957; *Black & Yates v. Mahogany Ass'n.,* (3 *Cir.*) 129 *F. 2d* 227, 148 *A.L.R.* 841; *Liberty Life Assur. Society. v. Heralds of Liberty,* 15 *Del. Ch.* 369, 138 *A.* 634. In the latter case, the defendant was restrained from circularizing letters containing libelous statements, but various acts of unfair business competition also appeared. The trade libel question was not discussed, but, in principle, it seems difficult to differentiate that case from the present one.

In the *Edison* case [128 *F.* 963], Judge Bradford aptly said:

"The case now in hand, being one merely of libel or defamation of business reputation, unaccompanied by threats, intimidation or coercion, or by any direct attack upon property or conduct of busi-

ness, or by any direct or indirect creation of liability on the part of the complainant, is not within the equitable jurisdiction of this court."

The necessary conclusion therefore is that a continued course of wrongful action may ordinarily be stopped by injunction, although it includes a trade libel. *Nims, Unfair Competition and Trade Marks, (3rd Ed.)* § 623. Intimidating possible customers by baseless threats to sue, should they deal with the complainant, comes within that rule (see *Maytag Co. v. Meadows Mfg. Co., supra; Edison v. Thomas A. Edison, Jr., Chem. Co. supra*) ; unfair competition is not confined to passing off the goods of one for that of another. *Allen Mfg. Co. v. Smith, supra.*

Text writers have frequently criticized what they term an indirect approach to trade libel cases, and have argued that equity should enjoin them even though no other jurisdictional facts appear. They say that the remedy by an action at law might be wholly inadequate, and, if injunctive relief is refused, would result in great hardship to the cross complainant. See *Dean Pound, 29 H.L.R. 640, 668.*

A recent dictum of the United States Court of Appeals for the Third Circuit, which includes the District of Delaware, has indicated its approval of that point of view (*Black & Yates v. Mahogany Ass'n., supra*) ; but under the facts of this case it seems unnecessary to consider that question.

*Article 1, Section 5* of the *Delaware Constitution of 1897* provides:

"The press shall be free to every citizen who undertakes to examine the official conduct of men acting in a public capacity; and any citizen may print on any subject, being responsible for the abuse of that liberty."

The cross defendants emphasize the phrase "being responsible for the abuse of that liberty," and suggest that an action at law must have been contemplated. Substantially, the same provision has been in the Delaware Constitu-

tions since 1792, and evidently was not intended to cover libels of this nature. See *Black & Yates v. Mahogany Ass'n.*, *supra.*

There are allegations that some of the statements in the letters were made pursuant to a plan and conspiracy to suppress business competition (Exhibit "B", par. 4) ; and pursuant to a scheme or plan by which the cross defendants sought to create the impression that a decree had been entered in the original proceedings, enjoining the cross complainant from continuing to sell its new "Pitman Rapid Fryer," and had thereby deceived prospective customers (Exhibit "B", par. 5). See *Maytag Co. v. Meadows Mfg. Co., supra.* But the cross complainant does not rely on these charges and it is unnecessary to consider whether the statements made justify the allegations of the bill.

The statements contained in the sixth and eighth paragraphs of the letter, designated as Exhibit "B", however, sustain the cross complainant's claim that the cross defendants sought to intimidate customers and prospective customers of the cross complainant by baseless threats to involve them in litigation if they dealt with the cross complainant. The cross defendants say that these statements were merely of an advisory and friendly nature, but they would hardly be so construed by persons receiving the letters.

The cross defendants' demurrer is overruled and an order will be entered accordingly.